252 So.2d 108

**Marvin Eugene FELTON**

v.

**STATE.**

**8 Div. 65.**

Court of Criminal Appeals of Alabama.

Nov. 2, 1971.

John C. Martin, William N. Pitts, Tuscumbia, for appellant.

MacDonald Gallion, Atty. Gen., and W. Mark Anderson, III, Special Asst. Atty. Gen., for the State.

PER CURIAM.

In the Colbert County Circuit Court appellant was convicted of murder in the second degree and sentenced to twenty-five years imprisonment. He was indicted in more than one case. The charge in this case being murder in the first degree. Being indigent, he was represented at the trial by two attorneys appointed by the court and by two different ones on appeal.

The minute entry shows that on August 16, 1968, in open court in the presence of the court, the district attorney, the attorney for the defendant, and the defendant, the jury brought in the following verdict:

"We, the jury, find the defendant guilty of murder in the second degree, as charged in the indictment, and fix his punishment at 25 years imprisonment in the penitentiary."

The record shows the following:

"BY THE COURT: Gentlemen of the jury, have you reached your verdict?

"MR. HENDERSON: Yes, sir, we have Judge.

"BY THE COURT: May I have it, please? Will the defendant stand, please?

"(The defendant stood.)

"BY THE COURT: Gentlemen, is this your verdict—'We, the jury, find

the defendant guilty of murder in the second degree, as charged in the indictment, and fix his punishment at 25 years imprisonment in the penitentiary;' signed 'Hugh P. Henderson, Foreman?' Gentlemen, is that your verdict?

"MR. HENDERSON: Yes, sir.

"BY THE COURT: All right. Does the defendant have anything to say before sentence is imposed upon him?

"MR. BOYNTON: I would like to poll the jury, please.

"BY THE COURT: All right, sir.

"(The jury was polled.)

"BY THE COURT: Does the defendant have anything else to say, please?

"MR. BOYNTON: No, sir.

"BY THE COURT: All right, sir, in accordance with the jury verdict, the defendant is adjudged guilty of 'Murder in the second degree' and the court does sentence the defendant, in accordance with the jury verdict, to 25 years imprisonment in the penitentiary. All right, Mr. Sheriff, he is in your custody. You gentlemen of the jury are discharged and I want to thank you very much. Court will stand adjourned."

■ Appellant argues for error because the record does not show whether any juror, when polled by the court on request of attorney for appellant, answered in the negative that the verdict reached and received by the court was not his verdict, agreed to by him along with the rest of the jurors serving on the case.

The Statute relied upon reads as follows:

"When a verdict is rendered in either a civil or criminal case, and before it is recorded, the jury may be polled, on the requirement of either party; in which case they must be asked severally if it is their verdict; and if any answer in the

negative, the jury must be sent out for further deliberation."

■ It is not necessary for the juror to answer by word of mouth when being polled under Tit. 30, § 101, Code of Alabama, 1940. The answer may be made as intelligibly and affirmatively by a movement of the head as by words. Brown v. State, 141 Ala. 80, 37 So. 408.

The record affirmatively shows when the jury returned the verdict in open court where there were present the trial judge; the district attorney; the defendant and his attorney, Mr. Boynton, at whose request the jury had been polled; the sheriff; and, of course, the court reporter; no motion or statement of any kind appears to have been made by the attorney for the appellant, and he was immediately sentenced by the court and taken into custody by the sheriff.

■ No objections to these proceedings were made by the appellant. Matters not objected to in the trial court cannot be considered for the first time on appeal, since a review on appeal is limited to those matters on which rulings are invoked at nisi prius. Smith v. State, 40 Ala.App. 600, 119 So.2d 202; Thompson v. State, 44 Ala.App. 414, 211 So.2d 505.

■ Even though a defendant is deprived of his statutory right under § 101, supra, this does not render the verdict void but is an irregularity which will support a reversal only. Allen v. State, 260 Ala. 324, 70 So.2d 644.

■ The argument on this point in effect asks this court to presume error on the part of the court with injury to the appellant, which we cannot do. To the contrary, error is not presumed on review (even in criminal cases) and the appellant has the burden of establishing reversible error. Many cases directed to this point are collected in Alabama Digest, Criminal Law ⚮1141(1) and 1141(2). We have

been cited no case in point in support of the contention of the appellant in this matter.

The minute entry shows that on May 24, 1968, the appellant in open court with his attorneys was arraigned and the case was set for trial on June 4, 1968. A special venire was drawn but the case was continued several times at the request of appellant before trial.

On June 12, 1968, appellant filed motion to quash the venire and the indictment because of the systematic exclusion of women and Negroes from the jury roll of Colbert County, and a motion to examine the jury box and roll. The court, pending further proceedings, granted and allowed appellant to examine the jury roll and jury box and the case was continued on several occasions to allow him ample time.

However, on July 17, 1968, appellant, with his attorney in open court, withdrew and dismissed the above referred to motions and the case was set for trial on August 5, 1968, by the regular venire along with a special venire drawn for this purpose.

The testimony shows that on March 26, 1968, appellant was a member of a crew demolishing an old house for the City of Sheffield. An argument broke out in which the appellant was accused of reporting to his boss, Wayne Stockwell, that one of the members of the crew, Erin Thrasher, had stolen some tools, belonging to Mr. Stockwell. There were some harsh words passed between the two, and the appellant threw a soft drink bottle and a brick at Thrasher but failed to strike him. Thrasher left the scene to get the boss to have the matter settled, and the appellant also left the scene, went home, secured a pistol and came back to the job. Present when he came back, among several other members of the crew, were William Taylor, the man later killed, and Taylor's brother, Joe. Both of the Taylors, William and Joe, quarreled with appellant, who resumed his work for a very short time and suddenly he turned, drew a pistol and shot William Taylor in the head. From this gunshot wound, he died. Appellant immediately thereafter shot Joe Taylor who apparently had no part in the last part of the proceedings.

Appellant was some twelve feet or more away from William Taylor, the deceased, when he fired the fatal shot. William Taylor was unarmed except he had a plank in his hand which he evidently tore from the side of the house as a part of his work shortly beforehand. He was not advancing on appellant nor making any threatening gestures at the time. Appellant, immediately after he fired the shots, turned and walked away, going to the local police station where he surrendered himself and his weapon to the officer in charge.

From a careful reading of the evidence it appears to this Court that the group of men, including the appellant, had heretofore worked in harmony and had had little, if any, difficulty of any kind.

Appellant introduced as an expert witness Dr. Joseph Dennis Jackson to testify in connection with his plea of insanity and appellant argues that the court has the duty to declare to the jury whether or not a witness is qualified to give expert testimony. In this case the court refused to make that statement to the jury but permitted Dr. Jackson to testify that he was a medical doctor and a psychiatrist, and allowed him wide latitude in his testimony regarding the relation of the science of psychiatry and the impact of events on the human mind. The court, in a colloquy with the attorney for appellant, in open court did say:

"* * * I rule that he is a doctor and can testify as such and he can testify to these matters as relates to psychiatry or medicine and I rule that he can so testify."

The jury had the full benefit of the testimony of the witness. The weight and credibility given the testimony of any wit-

ness is for the jury to determine. We hold there was no error in the ruling of the court.

■ The court refused to give at the request of the appellant the following charges in writing:

*Defendant's Jury Instruction # 1:*

"If you find from all the testimony, that the defendant, at the time of the killing, suffered from a personality defect, such defect causing him to be unable to exercise his judgment of reasonable man, then you shall find the defendant not guilty by reason of insanity.

"Refused, Delony Judge."

*Defendant's Jury Instruction # 2:*

"If you find, from all the testimony, that the defendant, at the time of the killing suffered from such a character defect, said defect being more than an emotional outburst, of passion, and said defect being recognized in the field of modern psychological medicine as a form of insanity, then your verdict shall be not guilty by reason of insanity.

"Refused, Delony Judge."

*Defendant's Jury Instruction # 3:*

"If you find, from all the testimony, that the defendant suffered no physical disease causing mental instability, but had an existing defect of character which prevented him from using the judgment of a reasonable man, then you should return a verdict of not guilty by reason of insanity.

"Refused, Delony Judge."

*Defendant's Jury Instruction # 4:*

"If you find, from all the testimony, that the defendant, at the time of the killing, suffered a delusion which caused him to believe that it was necessary to take the life of William Wesley Taylor,

then your verdict shall be not guilty by reason of insanity, although the delusion was created by a psychological and not a physical disability.

"Refused, Delony Judge."

*Defendant's Jury Instruction # 5:*

You must find the defendant not guilty by reason of insanity, if you find from all the testimony, that at the time of the act he was belaboring under such defect of reason, as a result of a psychological illness, as not to exercise the judgment of that of a reasonable man.

"Refused, Delony Judge."

*Defendant's Jury Instruction # 6:*

"If you find, that at the time of the killing the defendant, owing to a personality defect, together with the provocation of others experienced certain chemical changes within his body which caused him to exercise the reason of an ordinary man, then your verdict shall be not guilty by reason of insanity.

"Refused, Delony Judge."

*Defendant's Jury Instruction # 7:*

"If you find that at the time of the act, the defendant, owing to a personality character defect, experienced a delusion that an attack upon him by William Wesley Taylor was imminent then you shall return a verdict of not guilty by reason of insanity.

"Refused, Delony Judge."

*Defendant's Jury Instruction # 8:*

"If you find that the defendant, at the time of the act, felt compelled to shoot William Wesley Taylor, and such compulsion arose from a defect in character and personality then your verdict shall be not guilty by reason of insanity.

"Refused, Delony Judge."

None of these charges is a correct statement of the law of insanity as a defense to crime under the laws of Alabama. A long line of cases beginning with Parsons v. State, 81 Ala. 577, 2 So. 854, has stated the element of this defense with clarity and these refused charges seek to vastly enlarge the field.

It is not necessary to discuss the different charges since they all have this vice in varying degrees. The action of the court in refusing to give each one was free from error.

■ The test of insanity as a defense to crime in Alabama is as follows:

1. Was the defendant, at the time of the commission of the crime, as a matter of fact, afflicted with a disease of the mind, so as to either be idiotic or otherwise insane.

2. If such be the case, did he know right from wrong as applied to the particular act in question. If he did not have such knowledge, he is not legally responsible.

3. If he did have such knowledge, he may nevertheless not be legally responsible if the two following conditions concur:

(a) If, by reason of the duress of such mental disease, he had so far lost the power to choose between the right and wrong, and to avoid doing the act, or that his free agency was at the time destroyed; and

(b) If at the same time, the alleged crime was so connected with such mental disease, in the relation of cause and effect, as to have been the product of it solely. *Parsons,* supra.

This law has been so often reiterated by the appellate courts of Alabama that it is not necessary to cite further authorities.

■ The general rule of law is that a defendant may not testify as to intent and motive, but where the plea of insanity has been entered it is largely discretionary with the court as to the general range and scope of inquiry into the state of mind at the time of the killing to shed some light upon the question of the said defense of insanity.

■ Irrespective of the rule, this defendant was allowed by the court to testify as follows: "I was too scared to move—I was too nervous and scared to know what he was doing—I was nervous and scared." At least on one other occasion he was allowed to testify that at the time of the shooting he was scared. He can, therefore, take no advantage from the court's ruling along this line.

The motion for a new trial, overruled by the court, contends that the appellant was either guilty under the evidence of murder in the first degree or was not guilty by reason of insanity, and that the verdict of murder in the second degree was based upon and permeated with white racism and that it sought to compromise itself and indeed the entire community of Colbert County by finding the appellant guilty of second degree murder and sentencing him to imprisonment for twenty-five years.

■ As to the charge of racism, the jury was examined on voir dire at great length by the attorneys covering this subject thoroughly. During the trial there was no substantial evidence to support the charge. It is true appellant is a Negro but the evidence shows a friendly relationship between him and the crew of whites with whom he worked, even to the extent of, at times, banter between them.

■ With regard to the defense of insanity, the court allowed wide latitude in any and all evidence which would shed any light on the subject and appellant cannot offer any substantial complaint here.

■ There is no merit in the contention in the motion that appellant could not be convicted of murder in the second degree. There was no error in overruling the motion.

We find no error of a prejudicial nature to the appellant in the record and the cause is due to be affirmed.

The foregoing opinion was prepared by W. J. HARALSON, Supernumerary Circuit Judge, and adopted by this Court as its opinion.

Affirmed.