302 So.2d 545

**Walter WAINWRIGHT**

v.

**STATE.**

**3 Div. 221.**

Court of Criminal Appeals of Alabama.

July 30, 1974.

Rehearing Denied Oct. 1, 1974.

Elno A. Smith, Jr., Montgomery, for appellant.

William J. Baxley, Atty. Gen., and George M. Van Tassel, Jr., Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of assault with intent to murder and sentenced to the penitentiary for a term of ten (10) years.

On September 26, 1972, he appeared for arraignment and was represented at the

time by Honorable W. Clarence Atkeison, an attorney at Prattville, Alabama, who was present, and a plea of not guilty was interposed to the indictment.

The case came on for trial on April 30, 1973, and appellant was then represented by Honorable Elno A. Smith, Jr., an attorney from Montgomery, Alabama.

The facts, though in sharp dispute, are not complicated. On the evening of January 21, 1972, there was a school sponsored "Beauty Walk" at the Marbury High School in Autauga County. Marbury High School is an integrated school but is predominately white. Appellant was a twenty-six (26) year old white man who lived in Prattville and had formerly attended Marbury High School.

On the night of the "Beauty Walk", appellant and his brother Tom Wainwright and another white boy, Samuel Hale, were at Marbury High for this function. The three went to the restroom and saw several black boys, including Terry Cooper, Tommy Brown and Oscar White in the hallway near the restroom. Cooper and Brown were students at this school. When the whites emerged from the restroom, appellant accused Cooper, Brown and White of blocking the restroom door to prevent him from coming out. They denied this and the trouble started.

The principal of the school testified as a witness for the state. According to his testimony one of the students came to him during an intermission and told him there was some kind of problem in the hall and he went immediately to investigate. We quote from the record:

"Q. The complaint was made that something was going on down the hall?

"A. Yes, sir, and I started down the hall, and when I got in sight of what was happening, I saw Walter—(appellant—Walter knock Terry Cooper down, and when he did, he jumped back and pulled his knife out, and I walked on up to him, and I talked to him a little bit, and took him by the arm, and says, 'Walt, come on. We don't need any problems like this', and had started back down the hall with him, and one of the boys—I think it was Tommy Lee—(Brown)—said something. I don't know what, and Walt turned around, and attacked Terry, (Cooper), and when he did, I went to call the sheriff."

Other state witnesses testified that without the slightest provocation, appellant knocked Cooper down with his fist and Brown told appellant that he should not have hit Cooper as he had not done anything to him. Appellant then turned on Brown and cut him twice on his face and Brown testified that appellant also cut him twice in his side. After Brown was cut he ran down the hall with appellant chasing him. Brown picked up a chair and threw it at appellant to slow him up and then ran out the school building.

Brown was carried to the hospital in Prattville where a local doctor treated his knife wounds. According to the testimony of the doctor, Brown was severely wounded and it took 70 to 100 sutures to close the knife wounds.

Appellant and his witnesses had a different version of the matter. They claimed that when appellant came from the restroom he asked Cooper and Brown why they blocked the restroom door and Cooper started moving toward appellant with his hand in his pocket and appellant told him to take his hand out of his pocket; that Cooper told appellant he did not have a right to tell him what to do with his hands and kept advancing on him. Appellant knocked Cooper down and Brown then kicked appellant in the pelvic region whereupon appellant put the knife to him. Appellant admitted that after cutting Brown, he chased him down the hallway and out of the building.

Appellant's counsel, in brief, states that he was employed a few days

prior to trial and does not know if, in fact, appellant was arraigned and if the record fails to show an arraignment, the case is due to be reversed. In this assertion counsel is pre-eminently correct. Ala.Dig. "Criminal Law", ☞261(1).

Prior to the submission of this case, the Attorney General filed in this court, a petition for a writ of certiorari to correct the record, alleging:

"The record filed in this Court is incomplete or contains defects or omissions in that it does not affirmatively show that the defendant was represented by an attorney at his arraignment."

The Petition was granted and certiorari issued. The return to the writ shows that Mr. Atkeison represented appellant at his arraignment when a plea of not guilty was entered of record.

■ There is no necessity for two arraignments for one trial. Powell v. State, 37 Ala.App. 192, 65 So.2d 718; Baker v. State, 48 Ala.App. 535, 266 So.2d 340.

■■ As we have noted, the evidence for the state and the appellant was in sharp conflict as to who brought on the difficulty. If there is a reasonable inference to prove the existence of the corpus delicti the court should submit to the jury the question of the sufficiency and the weight of the evidence tending to support that inference. Hines v. State, 260 Ala. 668, 72 So.2d 296; Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; Felton v. State, 47 Ala.App. 182, 252 So.2d 108.

Appellant requested 18 written charges and the court gave the jury all of them.

There was no error in overruling appellant's motion to exclude the state's evidence and there was no error in denying the motion for a new trial.

Affirmed.

All the Judges concur.