LEIGH M. CLARK, Supernumerary Circuit Judge.
This is an appeal from another conviction of murder while robbing a storekeeper. Appellant was found guilty of murder in the first degree and sentenced to life imprisonment.
The question of the sufficiency of the evidence to support the conviction is not raised on appeal. Our review of the evidence convinces us that the guilt of appellant as charged and as found is amply supported by the evidence. We see no need to narrate it.
The only contentions made by appellant are (1) that the trial court committed reversible error in allegedly intimidating or threatening a witness and (2) the trial court erred to a reversal in making remarks in the presence of a jury that allegedly tended to demean or bring defendant’s counsel into contempt in the eyes of the jury. Although there is a connection between the two contentions, we will treat them separately, as well as in their relation to each other, and will attempt to do so fully.
While a witness, Okeither Lewis, was testifying as a State’s witness about what defendant had said to him soon after the alleged crime was committed, the witness said that defendant had not said anything. Thereupon the following occurred:
"MR. BARBER [Counsel for the State]; Your Honor, at this time I have something I’d like to take up outside the presence of the jury.
“THE COURT; Take the jury out, please. (Whereupon the jury was escorted into the jury room).
(Whereupon the following proceedings were held outside the presence of the jury).

“THE COURT; All right, Mr. Barber, go ahead.
“MR. BARBER: Your Honor, before I go any further, let me ask Mr. Lewis—
“THE COURT; Let the record show the jury has been taken out.
“VOIR DIRE EXAMINATION
“Q (BY MR. BARBER)
“Mr. Lewis, is your testimony that somewhere around 8:00 p. m. on Christmas Eve last year, that you saw Kelvin Brantley, Eugene Rankin, and Clint Ellis?
“A That’s right.
“Q Were you standing on the corner of Portland and some other street out in Wylam ?
“A Yes.
“Q And did those three people pass you in a group ?
. “A That’s right.
“Q And did you make the statement or ask the question, what’s happening?
“A That’s right.
“Q All right. Did the defendant say anything to you ?
“A He said he had made a hit.
“Q All right. Is that what Kelvin Brantley said?
“A No, Eugene Rankin.
“THE COURT; Wait just a minute.
“MR. AMARI; Your Honor, I didn’t get it either.
“THE COURT: What is the purpose of this examination, Mr. Barber ?
“MR. BARBER: Your Honor, I’d like to plead surprised to this witnesses’ testimony, and be allowed to impeach him if it please the Court.
“THE COURT; Well, I think predicate to that, I think you need to apprise him — I assume you are contending that *191 on another occasion this witness has had an occasion to testify contrary to the evidence given in this case; is that correct?
“MR. BARBER: Yes sir.
“THE COURT: All right. We’ll go into that.
“MR. BARBER: All right, sir.
“THE COURT: Now, insofar as my recollection is, your question to him earlier, in the presence of the jury, was did the defendant say anything to him ?
“MR. BARBER: Yes, sir. And that’s why—
“THE COURT: And he said at that time he didn’t say anything.
“MR. BARBER; Right.
“THE COURT: Now, in your recent inquiry, he has said that Rankin said something to him.
“MR. BARBER: Yes, sir. That’s why I asked that the jury be excused so I could clarify, make sure he understood my question as to who I was talking about spoke.
“THE COURT: All right. Proceed.
“Q (BY MR. BARBER)
“Mr. Lewis, do you recall in the past month — I’m sorry, your Honor, I can’t give an exact date. Do you recall testifying in a trial where the State charged Eugene Rankin with murder down at the other end of the hall in Judge Jasper’s courtroom ?
“A Charged him with murder?
“Q Yes, sir. Do you recall testifying in this matter when Eugene Rankin was sitting at the defense table instead of Kelvin Brantley?
“A Yes, I remember.
“Q Do you recall me asking you the question if you saw Kelvin Brantley and Eugene Rankin, and Clint Ellis around 8:00 o’clock on Portland Street ? Do you recall me asking you that ?
“A Yes, sir.
“Q Do you recall me asking you if you said anything to them ?
“A That’s right.
“Q And you answered that you asked them what was happening?
“A That’s right.
“Q And do you recall me asking you what, if anything, any of those people said?
“A Uh-huh.
“Q Do you recall answering that Kelvin Brantley told you they just made a hit?
“THE COURT: Mr. Lewis, do you understand the question ?
“A Yes, sir, I understand.
“THE COURT: All right. Now I want a response to that question. Do you or do you not recall testifying as the District Attorney has asked you ?
“A That’s right.
“THE COURT; You do recall? And you did so testify that on that occasion that Brantley said we just made a hit; is that your testimony, to your best recollection ?
“A Yes, sir.
“MR. WESTON: Judge, for the record, you just repeated what he testified to today, Your Honor, I think you meant to ask him if the present defendant made the statement.
“THE COURT: I’m giving him an opportunity- — I know what I meant, and I think the record is clear as to what I meant.
“Mr. Lewis, you have testified under oath here today about one thing and then *192 you have testified at another time, under oath, as I understand your examination on voir dire, about testifying something contrary to that. Do you understand the importance of the consequences of your admission that you are admitting perjury testimony; do you understand that ?
“A Yes, sir.
“THE COURT: I’m going to avail you an opportunity to testify in the presence of the jury again in response to some questions put to you by the District Attorney subject to cross examination by the defense attorney.
“I’m not going to rule at this point, but do you understand what I’m saying. We are going to bring the jury back in, and we are going over this line of questioning again, and I want you to understand what we are doing, and at that time I will make a ruling.
“Bring the jury back in.
“(Whereupon the jury was escorted back into the jury box)
“(Whereupon the following proceedings were had and done with the presence of the jury).
“THE COURT: Let the record show the jury is back in the box.
“MR. BARBER: If you will continue direct examination of this witness.
“FURTHER DIRECT EXAMINATION:
“Q (BY MR. BARBER)
“Mr. Lewis, on December the 24th of 1974, Christmas Eve of last year, did you see Kelvin Brantley, Eugene Rankin, and Clint Ellis around 8:00 o’clock on Portland Street in Wylam ?
“A That right.
“Q Did you say anything or address any comments or questions to this group of three people when you saw them ?
“A Yeah. I asked them what was happening.
“Q Did you address that to anybody in particular ?
“A No.
“Q Just the group?
“A (Shaking head)
“Q Did anyone in the group make a response ?
“A Yes, sir.
“Q Who?
“A Kelvin Brantley.
“Q What did Kelvin Brantley say ?
“MR. WESTON: Your Honor, we object to that question. We also object to any answer he is fixing to give to that question.
“THE COURT: On what ground ?
“MR. WESTON: On the grounds that what happened at voir dire put unnecessary pressure on this witness and prejudiced the rights of the defendant to ask the witness that question. There is no showing of any intent on the part of this witness to mislead the Court of the jury, and if he is going to ask the question, then I want the Court’s permission to get into what we got into on voir dire.
“THE COURT: Mr. Weston, I’m going to remain calm in the face of a very insulting comment by you to this bench that any pressure has been applied to anyone. But, if there is, I’ll be the one to apply it. There is no pressure on anyone in this courtroom when they testify other than their sworn oath to tell the truth, the whole truth, and nothing but the truth. Now, you know as well as I know the purpose of a voir dire examination. That was held, it is in the record, and you make your exceptions, but don’t make the mistake the second time of editorializing about it. If you do, I’ll *193 hold you in contempt and I won’t tell you twice.
“MR. WESTON: Yes, sir.
“THE COURT: Now just note your objections for the record, and I’ll rule of them; you understand ?
“MR. WESTON: Yes, sir.
“THE COURT: Do you have any other objections?
“MR. WESTON: No, sir.
“THE COURT: All right. Overruled.
“MR. WESTON: We except.
“THE COURT: All right. Continue.
Appellant urges that in that part of the proceeding out of the presence of the jury quoted above the trial judge “acted improperly by suggesting to the witness that he had admitted perjuring himself by testifying inconsistently with testimony given during trial of a codefendant.” In pressing the point, appellant argues that when the court in making known to a witness what perjury is “extends it to browbeating, threats and intimidation, the Court has gone beyond the bounds of judicial authority.” Appellant relies largely upon Turner v. State, 289 Ala. 97, 265 So.2d 883, not upon what was held in that case, for action of the trial court was upheld, but upon what was said to the effect that when the remarks of the court constitute “browbeating, threats and intimidation” they go “beyond the bounds of judicial authority.” There can be no just quarrel with that conclusion. It may well be that the trial judge could and should have been milder in what he said to the witness. Certainly, “the trumpet” did not “give an uncertain sound.” Even so, we do not construe the language of the trial judge as “browbeating, threats and intimidation.” It was clear that the witness had made two irreconcilable statements in testimony. The trial court did not direct the witness toward either statement, but made it clear that the witness should be careful in final-ly stating which of the two statements was correct. Furthermore, it is to be noted that appellant made no objection and took no exception to anything that was done or said out of the presence of the jury. We find that no action then occurred that warrants a reversal of the judgment.
In insisting that the case should be reversed by reason of what the trial court stated to defendant’s attorney when he objected in the presence of the jury to a question to the witness Lewis, “What did Kelvin Brantley say?”, appellant relies largely upon Dennison v. State, 17 Ala. App. 674, 88 So. 211. In Dennison, however, involving circumstances somewhat similar to those presented here, it was held:
“In the instant case we are not prepared to say that the alleged injurious language of the court addressed to appellant’s counsel was of the character to prejudice the attorney before the jury or to injuriously affect the substantial rights of the defendant. However, we are of the opinion that the trial court should have allowed defendant’s counsel full opportunity to make known his objections to the court, and to make such motions to the court as in the interest of his client he deemed necessary. It does not appear from the record that this opportunity was fully accorded defendant’s counsel.”
The record here shows that such “opportunity was fully accorded defendant’s counsel.” In addition, it is to be noted that although defendant objected to the question on the ground that “what happened at voir dire put unnecessary pressure on this witness and prejudiced the rights of defendant to ask the witness that question,” defendant made no objection, and took no exception whatever, to the remarks of the court of which appellant now complains.
We are not saying that the severity of the reprimand of counsel was justified. On the other hand, we feel that probably there was some misunderstanding between *194 defendant’s counsel and the trial judge, that perhaps the trial judge was somewhat stung by the objection in the presence of the jury by reason of alleged “unnecessary pressure” on the witness out of the presence of the jury, where there had been no objection to or criticism of what had taken place and that to some extent this influenced the trial judge to deal more stingingly with the situation than he otherwise would have done.
We do not believe that there was any error of the trial court as to either of the incidents complained of, or elsewhere in the record, that was prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Honorable Leigh M. Clark, Supernumerary Circuit Judge, serving us a judge of this Court under Section 2 of Act No. 288, Act of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.
The judgment below is hereby
AFFIRMED.
All the Judges concur.