First degree manslaughter; sentence: five years imprisonment.
Mrs. Lela Mae Barnes, sister of both the deceased, Mrs. Ella Mae Green, and the appellant, testified that she and the deceased were drinking at her home in Sprague, Alabama, on the evening of March 27, 1976. The appellant's husband called Mrs. Barnes to see if the deceased was visiting her, and about thirty minutes later, the appellant, her husband and her son arrived at Mrs. Barnes' home. Mrs. Barnes testified that the deceased became involved in an argument with the appellant over the death of the appellant's daughter. The appellant then drew a gun and shot the deceased at point blank range. The deceased threw a beer bottle at the appellant, and they scuffled on the floor. The appellant and her family then departed, leaving the deceased lying on the floor.
Jimmy Huffman, Jr., the appellant's son, testified that the deceased had argued with his mother that evening. He stated that the deceased asked the appellant to step outside to "cut it out or shoot it out," and his mother refused to do so. He testified that the deceased threw a beer bottle at the appellant as the appellant was leaving and that the deceased knocked the appellant down. Mrs. Barnes and the deceased then jumped on the appellant and began beating her. He stated that it was at that point that the appellant fired the shot which killed the deceased.
The appellant testified that she was attacked by the deceased and Mrs. Barnes as she was about to leave and that she did not fire the gun until the deceased began choking her. She stated that she fired two warning shots and was then forced to shoot the deceased to prevent the deceased from choking her further.
 I
The appellant's first contention is that the trial judge erred by "threatening" the witnesses at midtrial with contempt of court for giving false testimony. The *Page 1040 
judge's warning to the witnesses, given outside the presence of the jury, was prompted by obvious contradictions among the several witnesses' testimony as to (1) who was present during the fight, and (2) what actually occurred when the fatal shooting took place. The appellant argues that such a warning improperly injected the trial judge into the prosecution of the case, invaded the province of the jury and substantially prejudiced the rights of the appellant.
A thorough reading of the record reveals that it was obvious to the trial judge at the time he gave the warning that certain witnesses were undoubtedly and actively lying on the witness stand. The record further reveals that all comments made by the trial judge concerning perjured testimony were made outside the presence of the jury and without objection by the appellant's counsel at the time. Considering the fact that only one witness altered his testimony after the warning, any statements from the bench not relevant to that witness are irrelevant here because they were not prejudicial to the appellant. Bryson v.State, 264 Ala. 111, 84 So.2d 785 (1956). However, because Eddie Barnes did in fact alter his testimony after the judge's admonition, a review of the trial judge's remarks is necessary. The record reveals the following:
 "(Whereupon, the following was held out of the presence of the jury as follows:
 "THE COURT: Ask the witnesses to come in and line up right along there.
 "I want every one of you to listen to what I've got to say. We are going to get to the bottom of what happened out there. The jury is going to make the final decision as to what happened, but I'm going to end up making a decision as to who is in contempt of Court when they take the stand under oath and tell this Court that they don't know something that they do know — that they are standing there listening to an argument and don't know what it was about or that either somebody was there or either that they weren't there. There are questions that are being asked that people are saying I don't know to, that you couldn't help but know one way or the other what the answer is. . . . I'm talking to some folks that have already testified right now. Now, you've got the opportunity if you've already testified to purge yourself of that. By that I mean come on and tell me what you do know about this. Do you understand? There are people who are testifying to the question: What was the argument about, and they were standing in the room, they were there when the argument was taking place, they listened to the argument and somebody got killed over that argument and they are trying to say they have no idea to what the argument was about. Are you listening to me?
"A WITNESS: Yes, sir.
"THE COURT: Are you listening?
"A WITNESS: Yes, sir.
 "THE COURT: Now, I'm going to make a decision as to who's going to be in contempt of Court and who's going to jail and who's not going to jail based upon whether or not they are answering the question. If you don't know, that's fine. Answer I don't know. But, if you're in a fact and circumstance where, in this Court's opinion, you've either got to know and you're trying to tell me you don't know, I'm going to take it as refusing to answer the question and when you do that in this Court you will be in contempt of Court and I'm going to send you up there in jail and we are going to jog your memory. . . . Now, I want both of you who have already testified to let me know right now if there is anything you want to change or anything that you have remembered since you testified concerning what that argument was about or who was there? Do you want to change anything?
"A WITNESS: No, sir.
 "THE COURT: You still tell me you don't know what the argument was about?
 "A WITNESS: Yes, sir, I don't know what the argument was about.
 "THE COURT: I will deal with you when this case is over unless you change your mind between now and then . . ." *Page 1041 
Although the trial judge did not specifically name Barnes in the above admonition, Barnes retook the stand and testified outside the presence of the jury as follows:
 "THE COURT: Eddie Barnes, you have already been sworn in and you are still under oath. Have a seat. Turn around and look at me and tell me what you know.
 "THE WITNESS: As far as I know, the argument was about the child.
"THE COURT: What child?
"THE WITNESS: Aunt Bertha Mae's child.
"THE COURT: Why didn't you tell me that before?
"THE WITNESS: I haven't thought of it.
 "THE COURT: What do you mean you hadn't thought of it? You mean I just jogged your memory just then, is that right?
 "THE WITNESS: No, sir, it wasn't that, I just didn't want to go to jail.
"THE COURT: So you decided to tell the truth?
"THE WITNESS: Yes, sir.
* * * * * *
 "THE COURT: What was the reason for you not telling me that before?
"THE WITNESS: I just didn't remember.
 "THE COURT: Well, that's not a good enough answer just like it wasn't good enough before, so you got yourself into it again. I want to know who talked to you, if anybody — Did you talk to anybody between the time you left here just a minute ago and went out there?
"THE WITNESS: No, sir.
 "THE COURT: You just went back there and all of a sudden you remembered that?
 "THE WITNESS: I went back there and I talked to Sheriff White. He said that he would come out here and tell you what I told you —
* * * * * *
 "THE COURT: All right. I'm not satisfied yet. If you remember something else you tell Mr. White and I'll talk to you again as soon as you remember something else. . . ."
This court in Brantley v. State, Ala.Cr.App., 335 So.2d 189
(1976) intimated that if there was evidence of remarks constituting "browbeating, threats or intimidation," by the court that such would go "beyond the bounds of judicial authority." This court in that case found no such drastic statements were made. The court found no reversible error, pointing out that it was clear that false testimony had been given; that the court did not suggest a desired answer; and that the appellant made no objection to anything said or done outside the presence of the jury. The same elements in Brantley
are present in the immediate case, although considerably stronger language was used by the trial judge in this case. However, the problem is compounded here by the fact that not only did Eddie Barnes change his testimony, but he did so outside the presence of the jury. The jury was never exposed to Barnes' altered testimony. Accordingly, the jury had no opportunity as the trier of fact to weigh the two statements in reaching its determination as to the true occurrence of events in this case.
If Barnes' altered testimony had been beneficial to the appellant's case, then leaving the uncorrected perjured testimony before the jury might have been reversible error. However, because the altered testimony was detrimental to the appellant, indicating a motive for murder, no harm was done to the appellant by not bringing the altered testimony before the jury. See: Bryson, supra. Since the testimony harmful to the appellant was not heard, it resulted in no prejudice to her and thus no reversible error.
 II
A second point of error urged by the appellant concerned the action of the trial judge in sending for the door from Mrs. Barnes' home. This action was prompted *Page 1042 
by testimony by the state toxicologist and others as to the angle from which the shots were fired by the appellant. The toxicologist's theory of the angle of the trajectory contradicted the appellant's version of the shooting. The trial judge's action here, far from being an attempt to prosecute the case for the State as urged by the appellant, was merely an effort to bring crucial evidence before the jury to aid them in finding the truth. Allowing the jury to view the door would enable the jury to more clearly comprehend evidence already received by aid of a visual object. The jury was thus able to view the angle of the bullet entry into the door and did not have to rely on abstract testimony to draw a "word picture" in the mind of each juror. We find no abuse of discretion by the trial judge in this instance. McIntyre v. State, 26 Ala. App. 499,163 So. 660 (1935), cert. denied, 231 Ala. 141,163 So. 662.
 III
The appellant further contends that the trial court erred in allowing prejudicial and improper comments by the prosecutor in closing argument. The record fails to fully reveal the substance of several remarks of the prosecutor which were complained of by the appellant. In only one instance, the appellant's objection, "We're going to object to the theory of the defense being inconceivable . . .," comes close to revealing the substance of the prosecutor's remarks. However, we consider it too fragmentary to fully present the remark for review. The appellant, in brief, sets out each of the comments which he claims to be prejudicial, however, they do not appear in the record of the trial. Allegations in appellant's brief which recited matters not disclosed in the record cannot be considered on appeal. Smith v. State, Ala.Cr.App.,346 So.2d 465 (1976); Edwards v. State, 287 Ala. 588, 253 So.2d 513
(1971).
Where the prosecutor's argument passed beyond the bounds of legal propriety, it is the appellant's duty to specifically object and to preserve for the record substantially the language deemed improper. Flowers v. State, 269 Ala. 395,113 So.2d 344 (1959). The record must disclose with reasonable certainty what was said by the prosecutor in order for this court to attempt an informed review of the challenged comments. Only when this is done, can this court know with reasonable certainty what was said in the court below which influenced the trial judge to rule as he did. Otherwise the great presumption in favor of the correctness of the ruling of the trial judge will prevail. McClary v. State, 291 Ala. 481, 282 So.2d 384
(1973). The fragmentary objections contained in the instant record fail to meet the above criteria and hence no error was preserved for review by this court.
 IV
The appellant next contends that the trial court erred in allowing testimony concerning other acts of misconduct not charged in the indictment. Appellant asserts that the prejudicial effect of such testimony outweighed its probative value.
Lela Barnes, on redirect examination, testified as follows:
"Q. Is Arthur James Lee here today?
"A. No, he's not here today.
 "Q. And Bertha Mae Huffman shot Arthur James Lee, didn't she?
"A. Yes, she did.
 "Q. And that's the reason he ain't here today, isn't it?
"A. He ___ Well, he —
"Q. And she threatened him —
 "MR. BYRNE: We're going to object and move for a mistrial. That is highly prejudicial —
 "THE COURT: Just a moment. Ladies and gentlemen, go back into the jury room, please."
After having heard arguments from both counsel, the trial judge immediately instructed the jury to disregard all statements related to other prior shootings. The above-quoted testimony may have been objectionable as not falling within one of the exceptions to the rule against introducing prior offenses in a criminal prosecution. *Page 1043 
However, any possible prejudice to the appellant was eradicated by the trial court's immediate, thorough, and emphatically phrased instruction to the jury directing them to disregard that testimony and to confine their consideration to the offense charged in the indictment. Reaves v. State, 33 Ala. App. 296, 33 So.2d 376 (1947).
Much later in the trial, the following occurred during the direct examination of the appellant by her attorney:
"Q. How long have you owned that pistol?
"A. About eight or nine or ten years.
"Q. Do you carry it?
"A. Yes, sir.
"Q. Have you ever had to use that pistol?
 "[PROSECUTOR]: Judge, I object to whether she's had to use it. That's an improper question. If he can specify for what, where, when — the time.
"THE COURT: Sustain.
 "Q. Bertha Mae, was this the first time you had ever used that pistol?
"A. Yes, sir.
"Q. Have you ever used it since?
"A. No, sir."
In an effort by the prosecution to impeach the appellant on cross-examination, the following exchange took place:
 "Q. Now, you told your lawyer just now that you never used this gun before?
"A. No, sir.
 "Q. Okay. As a matter of fact, you shot your husband, didn't you?
"A. My husband?
"Q. Yes, your husband.
 "A. That was after — I was trying to clean it, if that's what you mean.
"Q. But you shot it, didn't you?
 "A. It was an accident. I was trying to get it open to clean it.
"Q. Okay. How about —
"A. That's what you mean.
 "Q. Okay. How about this Arthur James Lee that testified this morning? You shot him, too, didn't you?
"A. No sir.
"Q. You never shot him?
"A. I never shot him, no, sir.
"Q. Have you shot any others?
"A. No, sir."
It should be noted that the latter excerpt from the record, supra, shows no objection to the introduction of any of the testimony relating to the two other shooting incidents. Ordinarily, absent an objection and ruling thereon, there would be nothing presented for review by this court. Felton v. State,47 Ala. App. 182, 252 So.2d 108 (1971). However, immediately prior to the cross-examination of the appellant, defense counsel objected to the introduction of any evidence of the appellant shooting other persons on prior occasions. That objection, and arguments thereon, were conducted outside the presence of the jury. The trial judge stated that defense counsel had opened the issue of whether or not the appellant had ever used the gun before and that the appellant had emphatically denied ever firing it prior to the shooting charged in the indictment. The trial judge overruled defense counsel's objection, the jury returned to the courtroom, and the State began its cross-examination of the appellant. It was unnecessary for defense counsel to repeat the objection in the presence of the jury where he had just previously made a specific objection to the same evidence, and the trial judge, being fully aware of the ground of that objection, had overruled it. Anderson v. State, Ala.Cr.App., 354 So.2d 1156
[1977]. Also see: Taylor v. State, Ala.Cr.App., 337 So.2d 773
(1976) cert. quashed, Ala., 337 So.2d 776.
Appellant strongly asserts the defense of self-defense in this case. Apparently in an attempt to strengthen the appellant's claim of self-defense, her counsel on direct examination elicited the fact that she had owned the pistol for about eight to ten years, that she carried it, but that she had never used it before. From such testimony, the jury might deduce that the appellant carried a pistol for self-defense, but during all those years had only used it on the one occasion when she was on the floor being choked to death and then only for the purpose *Page 1044 
of saving her own life. We find nothing improper in allowing the State, on cross-examination of the appellant, to elicit from her that her prior testimony was incorrect and that she had in fact shot her husband. She was allowed to explain that such shooting was by accident as she was trying to clean the gun. She denied having shot Arthur James Lee.
We do not deem this to be an improper interrogation of the witness on cross-examination. The State was not attempting to show prior acts of misconduct through another witness for the purpose of impeaching the appellant. The State was merely cross-examining her on a statement she had made on direct examination. We, therefore, find no error on the part of the trial judge in this regard.
 V
The appellant's final contention is that the trial court erred in instructing the jury to disregard testimony concerning prior specific wrongful acts of the deceased. Testimony by Lela Mae Barnes, elicited by defense counsel on cross-examination, revealed that the deceased had previously shot one Robert E. Lee. The trial court first allowed the answer, but later excluded that evidence, instructing the jury to disregard it. The appellant contends that this erroneously denied her a basis for a self-defense plea.
In a prosecution for homicide, if the evidence tends to show that the accused was justified under the right of self-defense, he may prove the victim's bad general reputation for peace and quietude, for violence or a like trait, as tending to show that the victim was the aggressor. Headley v. State, 51 Ala. App. 148, 283 So.2d 458 (1973).
It appears that no evidence indicating that the appellant acted in self-defense had been presented by the appellant at the time these specific acts were elicited by defense counsel. There is authority for holding that any question dealing with the deceased's character will be premature and improper at that time. Lambert v. State, 208 Ala. 42, 93 So. 708 (1922); Russellv. State, 46 Ala. App. 230, 239 So.2d 902 (1970). However, we do not base our decision upon the reasoning in Lambert alone. We are not saying that a defendant cannot elicit evidence of self-defense by cross-examining the State's eyewitnesses to the killing. In many instances, this may be the only avenue open to the defendant to prove self-defense. Our decision on this issue only relates to eliciting evidence as to the character and reputation of the victim. Our decision is additionally based upon the rule that the turbulent or bloodthirsty character of the deceased cannot be established by particular acts of violence. Hence, the trial court did not err in excluding from the jury the evidence of the deceased's specific act of violence, i.e. shooting Robert E. Lee. Higginbotham v. State,262 Ala. 236, 78 So.2d 637 (1955).
The appellant cites the confusingly worded case of Lambert
supra, for the proposition that such specific acts may be brought out by the defense on cross-examination. We have a different construction of the import of Lambert. That case merely points out that once the accused introduces evidence of the victim's reputation for being a violent person, the State may test the soundness of the witness' opinion on cross-examination by eliciting the data upon which it is founded, such as cross-examining as to particular facts affecting character. Lambert does not alter the long-standing rule restricting the inquiry of the defense into the reputation of the deceased by disallowing evidence of specific acts.
Counsel for appellant have provided this court with excellent briefs and outstanding oral argument on behalf of their client. All the grounds relied upon by counsel for reversal have been considered in light of the record, briefs and such argument, but after careful deliberation we find no reversible error has been shown. The rulings of the trial court challenged by appellant in our opinion did not constitute harmful error.
AFFIRMED.
All the Judges concur. *Page 1045