### SMITH v. STATE. (4 Div. 68.)

(Supreme Court of Alabama. May 17, 1923.
Rehearing Denied June 21, 1923.)

**1. Jury ⟨⟩82(2)—Motion to quash venire held properly overruled.**

It was not error to overrule the motion of accused to quash the venire on the ground that it contained the name of David M. Mison and that David M. Mixon was summoned and that it contained the name of two persons who had participated in a former trial of the case, in view of Acts 1909, p. 317, § 29, and Acts 1919, p. 1042.

**2. Homicide ⟨⟩175—Evidence of general physical condition of deceased held factor in determining cause of death.**

Where a witness for the state had testified to the character of the wound on deceased and had been interrogated as to whether death resulted. directly from the wound or from an intervening cause, such as blood poison or meningitis resulting from the wound, the general physical condition of deceased at the time he was wounded was a factor to be considered in arriving at the real direct cause of his death.

**3. Homicide ⟨⟩164—Physical condition of parties not admissible for defendant in absence of evidence of self-defense.**

As a general rule, the physical condition or relative sizes of the parties is not admissible in the instance of the defendant, in the absence of evidence tending to show self-defense.

**4. Homicide ⟨⟩164—Evidence of physical condition of deceased held competent after claim of defense of another was interposed.**

Even though evidence of poor physical condition of deceased at the time of the difficulty was irrelevant when' first introduced by the state, it was made material by subsequent evidence on part of defendant attempting to show that he struck deceased under an impending necessity to save the life of his father or to protect him from serious bodily harm.

**5. Witnesses ⟨⟩280—Cross-question asked by defendant's counsel held improper in form.**

In a prosecution for homicide it was not error to decline to permit counsel for defendant to ask a witness on cross-examination why the witness never told about a knife until counsel asked him, since the question was bad in form, and especially where the witness had already been fully examined as to the knife.

**6. Criminal law ⟨⟩814(8, 9) — Charge there was no conspiracy held abstract.**

In a prosecution for homicide, which defendant claimed he committed in defense of his father against an attack by deceased, where there was no contention by the state that there was any conspiracy between the defendant and his father and brother, who was also present, a requested charge that there was no conspiracy if. the evidence was believed was properly refused as abstract.

**7. Homicide ⟨⟩254—Evidence held to sustain conviction of second degree murder.**

In a prosecution for homicide where the state claimed defendant struck deceased with an axe, while defendant testified that he struck him only with a stick and then in necessary defense of his father, who was attacked by deceased with a knife, evidence *held* to justify the trial court in refusing defendant's motion for a new trial after a conviction of murder in the second degree.

Appeal from Circuit Court, Coffee County; A. B. Foster, Judge.

Earnest Smith was convicted of murder in the second degree, and appeals. Affirmed.

The defendant, with his father and brother, were working on the side of the road near their home, when deceased, John Lowery, with his young son (Emmett), drove by in a buggy. Evidence for the state was to the effect that defendant's father. (Bud Smith) called to deceased, saying he wanted a settlement; that he went up to the buggy and, after some words, struck deceased in the face; whereupon deceased made a movement toward his pocket, Steve Smith (defendant's brother) caught his wrist, and defendant struck deceased on the head with an axe. Evidence for defendant was to the effect that deceased called to defendant's father, who went up to the buggy and, by a movement of the buggy, was caught between the wheels; that deceased drew his knife and began cutting at Bud Smith, but did not actually cut him; that defendant asked deceased to stop cutting at his father, and, deceased failing to stop, defendant struck him on the head with a stick.

W. R. Crook, a witness for the state, testified that he was a practicing physician; that he was called to see John Lowery on the afternoon he was hit; that Lowery had a wound on his head, beneath which the skull appeared to be crushed; that thereafter he and another physician removed the fragments of the skull and treated the wound; that Lowery died some four or five days after being stricken; that the immediate cause of his death was meningitis, but that he would not have had meningitis except for the wound. Over objection of defendant this witness testified that, aside from the wound, deceased's physical condition was very poor. Other witnesses testified that deceased was a cripple.

Charge G, refused to defendant, is as follows:

"The court charges the jury that if you believe the evidence in this case, there was no conspiracy or agreement on the part of the defendant and his father or brother Steve to take the life of or assault the deceased."

W. O. Mulkey, of Geneva, for appellant.

In the absence of evidence of self-defense, evidence of the relative size and physical

condition of the parties is immaterial. Robinson v. State, 155 Ala. 72, 45 South. 916; Stevens v. State, 84 Neb. 759, 122 N. W. 58, 19 Ann. Cas. 121; State v. Cushing, 17 Wash. 544, 50 Pac. 512. Counsel argue other questions, but cite no additional authorities.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The fact that the list of jurors served on defendant contained the name of David M. Mison, who was not drawn, and that David M. Mixon, whose name did not appear on the list, was drawn and summoned, did not constitute ground for the quashal of the venire. Harris v. State, 203 Ala. 200, 82 South. 450; Reed v. State, 18 Ala. App. 371, 92 South. 513; Acts 1909, p. 317; Acts 1919, p. 1042. The state may offer evidence of the physical condition of the deceased. 21 Cyc. 911; Gunter v. State, 111 Ala. 23, 20 South. 632, 56 Am. St. Rep. 17; Harris v. State, 123 Ala. 69, 26 South. 515.

ANDERSON, C. J. [1] The fact that the venire contained the name of "David M. Mison" and that "David M. Mixon" was summoned, and that it also contained the names of two persons who had participated in a former trial of the case, afforded no ground for quashing the same, and the trial court did not err in overruling the defendant's motion to quash said venire. Harris v. State, 203 Ala. 200, 82 South. 450; Reed v. State, 18 Ala. App. 371, 92 South. 513; Acts 1909, p. 317. § 29; Acts 1919, p. 1042.

[2] Dr. Crook had testified as to the nature and character of the wound, had been interrogated as to whether death was the direct result of the wound or whether resulting from an intervening cause, blood poison or meningitis, resulting from the wound, and the general physical condition of the deceased at the time of the blow was, of course, a factor to be considered in arriving at the real direct cause of death.

[3, 4] As a general rule, the physical condition or relative sizes of the parties is not admissible at the instance of the defendant in the absence of evidence tending to show self-defense. Robinson v. State, 155 Ala. 72, 45 South. 916, and cases there cited. There may be instances, however, when such facts may be of the res gestæ or may have some bearing on the question of malice and would be admissible on the part of the state in making out its case. 21 Cyc. p. 911. It is not necessary, however, to apply the above-noted exception to the case at bar for the reason that if it be conceded that the physical condition of the deceased was irrelevant at the time it was introduced it was made material by the subsequent evidence on the part of the defendant attempting to show that the blow was struck under an impending necessity to save the life of his father, or to protect him from serious bodily harm, and the general infirm and physical condition of the deceased was a question for the jury in ascertaining the true nature of the difficulty, and whether or not the father of the defendant was in such imminent peril as to excuse the assault made upon the deceased with the axe or limb of a tree which resulted in his death. True, this fact was proven not only generally but with tedious and unnecessary detail, but it all had a bearing upon and tendency to establish a weak and almost helpless condition of the deceased at the time of the difficulty.

[5] The trial court will not be put in error in declining to let counsel for the defendant ask the witness on cross-examination:

"Emmett, why is it that I always have to ask you about that knife business? You will never tell it until I ask you about it."

In the first place, it is bad in form; second, the witness had already been fully examined as to the knife.

[6] Charge G, refused the defendant, was abstract. There was no effort on the part of the state to establish a conspiracy, nor did the evidence tend to do so.

[7] We cannot say that the trial court erred in refusing the defendant's motion for a new trial. The state's evidence fully justified the verdict; but even if the blow was with a limb instead of with an axe, and even if the deceased had his knife out instead of its being in his pocket, it was open for the jury to find that the fatal blow was not essential to save the defendant's father and was maliciously inflicted.

While we have not discussed all the exceptions and objections disclosed by the record, the same have been carefully considered, and we fail to find reversible error, and the judgment of the circuit court is accordingly affirmed.

Affirmed.

McCLELLAN, SOMERVILLE, and THOMAS, JJ, concur.