BOOKOUT, Judge.
First degree manslaughter; sentence: ten years imprisonment.
The deceased, Hiram Fuller, was shot to death in the parking lot of Flo’s Lounge in Woodlawn, a Birmingham suburb. The shooting took place at approximately 12:30 A.M. on January 3, 1976. The sequence of events leading up to the shooting was relatively undisputed at trial. The evidence showed that the appellant and a friend, Robert Hancock, had played pool for money with the deceased a couple of hours before the shooting. A State’s witness testified that the appellant had a pistol in his boot which was similar to the pistol which was identified at trial as the murder weapon. However, the appellant and the owner of the pistol, Mark Giles, denied that the appellant had possession of the pistol on the night in question. It also appears that Hancock bought a bottle of vodka for the deceased and a companion of the deceased. The appellant and Hancock left Flo’s and returned a short time later with Mark Giles in search of the deceased.
The appellant and Hancock again entered Flo’s. They talked to the deceased who subsequently went out into the parking lot with them. The appellant contends that the deceased went out to get what was left of the vodka which had been purchased for him earlier. Both the appellant and Giles contended that their companion, Hancock, shot the deceased for no other reason than the fact that Hancock was extremely drunk. After the shooting, the appellant, Giles and Hancock fled the scene. Subsequently, Giles, accompanied by the appellant, sold the murder weapon to a friend.
The deceased had exhibited a large sum of money while playing pool with the appellant and Hancock. However, the deceased still had a good sum of money on him when he was found dead in the parking lot.
The appellant was indicted for first degree murder, and the State apparently prosecuted him under the felony-murder doctrine, in combination with Title 14, § 14, Code of Alabama 1940. The only evidence that the murder occurred during the perpetration of a robbery was the rather weak inference to that effect which one might draw from the fact that the deceased had exhibited a large sum of money just prior to his death, and that he may have been lured into the parking lot for the purposes of being robbed. The appellant, on appeal, however does not attack the sufficiency of the evidence.
I
The appellant contends that the trial court erred to reversal in excusing a prospective juror for cause on motion of the State, contrary to the principles enunciated in Davis v. State, Ala.Cr.App., 338 So.2d 507 (1976). That principle is as follows:
. . [I]t would appear that (and this Court does hold) that a general question concerning the juror’s ‘fixed opinion’ about penitentiary confinement will not suffice. Instead he should be examined further to determine if his opposition is such that he would not inflict penitentiary confinement regardless of the evidence and instructions of the Court as to the law. ...”
The colloquy in question in the instant case is as follows:
“MR. JOHNSON: As His Honor went over with you, if you are selected as one of the jurors in this case, if it falls upon *1003 your shoulders to set punishment in this case, as His Honor also told you this indictment charges murder in the first degree and the punishment for murder in the first degree is life imprisonment in the penitentiary. With that in mind let me ask you this: Can any of you say, and think about this now in your mind, can any of you exclude that you would not consider life imprisonment in the penitentiary in first degree murder in this case?
“THE COURT: Rephrase that, please, sir.
“MR. JOHNSON: Yes, sir.
“THE COURT: Are you saying to them if any of them know right now they would not give life imprisonment regardless of the facts or circumstances?
“MR. JOHNSON: Yes, sir.
“THE COURT: Any of you right now know before we get started that you would not convict this Defendant of first degree murder because the punishment is life imprisonment regardless of what the facts show, any of you know that right now?
“JUROR STEPHENS: I couldn’t say that to them words, but it would have some bearing on what I think about it.
“THE COURT: In other words, you’re saying right now, without hearing any of it, you would not convict this Defendant of murder in the first degree? I’m not arguing, I just want to know that’s right, if you think that. But you know right now you could not convict this Defendant of murder in the first degree?
“JUROR STEPHENS: Not in those words, no.
“THE COURT: Well, tell me what you are thinking.
“JUROR STEPHENS: Well, I just — I believe if I was to fix punishment at life imprisonment it might effect the way I would think.
“MR. JOHNSON: Mr. Stephens, let me ask you this: Would you exclude this as — in your mind now, could you set the punishment if you were convinced from all the facts of this Defendant’s guilt, murder in the first degree, could you set punishment at life imprisonment?
“JUROR STEPHENS: I don’t believe so. I don’t believe I could set punishment.
“MR. JOHNSON: Judge, we would challenge.
“THE COURT: In other words, if I told you that the only punishment for murder in the first degree in Alabama, as of today, as far as this case is concerned, is life imprisonment and you were convinced that he was guilty, you could not find him guilty, because punishment is life, is that what you’re saying? I have to know, you see, why to exclude you.
“JUROR STEPHENS: I don’t believe I could.
“THE COURT: Could not convict him?
“JUROR STEPHENS: No, sir.
“THE COURT: All right, sir. Mr. Stephens, you may go back to the jury room. Thank you sir.
“MR. BLANTON: I object to the exclusion of this venireman on the grounds that the Defendant is entitled to the thinking of all manner and classes of people and that this exclusion is prejudicial to the Defendant.
“THE COURT: All right, sir, you may g°-
“(Whereupon, Juror Stephens was found to be disqualified by the Court, and replaced with Juror Edwards.)”
We have carefully compared the above colloquy in the instant case with the colloquy set out in Davis supra. Davis was affirmed because the colloquy was held to be sufficient. The colloquy in the present case is even more illuminating than the Davis colloquy to the effect that the juror had a fixed opinion against penitentiary confinement regardless of the evidence or the instructions which would be given by the court.
It is good cause for challenge by the State that a prospective juror has a fixed opinion against penitentiary punishment. Title 30, § 57, Code of Alabama 1940; Davis, supra.
*1004 II
During the cross-examination by appellant of Jay Glass, an assistant pathologist, the following occurred:
“Q. During your autopsy did you have occasion to determine the alcohol content of the deceased’s blood?
“A. I gave—
“MR. JOHNSON: I object to going into that.
“THE COURT: I sustain.”
A defendant’s right of cross-examination is a fundamental constitutional right, and that right is not limited to matters brought out on direct examination, but extends to all matters within the issues of the case. Ball v. State, Ala.Cr.App., 337 So.2d 31, cert. quashed, Ala., 337 So.2d 39 (1976).
The appellant contends that the alcohol content of the deceased’s blood was relevant to the homicide for which the appellant was charged. He asserts that a high alcohol content would support his story that the deceased went to the parking lot to obtain the vodka.
We make the following observations:
A. There was no dispute as to why the deceased went into the parking lot. All of the evidence indicated that he went there intending to obtain the vodka bottle.
B. The deceased had been at Flo’s for several hours before the shooting. He played pool and drank beer during that period of time. Therefore, a high blood alcohol content would not shed much light on the reason for the deceased’s presence in the parking lot.
C. There was no claim of self-defense in this case. A claim of self-defense would make the alcohol content of the deceased’s blood quite relevant.
In Ball, supra, we stated:
“The latitude and extent of cross-examination has been held to be subject to some limitation. Both state and federal decisions vest trial judges with the limited discretion to cut off questions on cross-examination which: (1) are repetitions,
(2) concern wholly collateral matters, (3) are irrelevant, or (4) are harassing, annoying or humiliating. . . .” (Citations omitted.)
In our opinion, the alcohol content of the deceased’s blood would not be relevant to any material issue in this case. Why the deceased went to the parking lot, absent a claim of self-defense, appears to be irrelevant. We do not think the trial judge abused his discretion in refusing to allow the appellant’s attorney to cross-examine Dr. Glass on an immaterial or irrelevant point.
Ill
During the State’s closing argument, the following occurred:
“MR. JOHNSON: His Honor, I think, is going to charge you as to the law as to what makes murder in the first degree when those three robbers went out there with that gun of Giles’ to get that man’s money.
“MR. BLANTON: We object to him characterizing the Defendant as a robber.
“THE COURT: Well, it’s argument.”
It might be inferred from the evidence that the appellant, Hancock, and Giles lured the deceased into the parking lot in order to rob him; that one of the three shot the deceased; and that after the shooting, they were frightened off and failed to take the money. Such an inference can at best be characterized as extremely weak. However, it is an inference the jury could draw from the evidence and, therefore, a permissible argument. See Barnett v. State, 52 Ala.App. 260, 291 So.2d 353 (1974).
AFFIRMED.
All the Judges concur.