LEIGH M. CLARK, Retired Circuit Judge.
On a trial on an indictment charging him with murder, a jury found appellant guilty of manslaughter, and the court fixed his punishment at imprisonment for ten years and sentenced him accordingly.
According to an abundance of undisputed evidence, the alleged victim, Charles Ryal Hall, was killed by one of two blasts from a shotgun fired by defendant, while the victim was standing in the doorway of the Ranch Club and while the defendant and his brother were sitting in an automobile near the entrance to the club. The undisputed evidence also shows that defendant and his brother had previously been in the club that night for a long period of time and had left the building on orders of the management and Mr. Hall, the alleged victim, who was one of three “bouncers” on duty at the time. Some time after they left the club building and before the fatal incident, Mr. Hall, acting as a bouncer, sprayed mace in the face of defendant, and one of the other bouncers kicked defendant.
There was no scarcity of eyewitnesses, which included the owner, the two surviving bouncers, other employees of the club, the defendant, the defendant’s brother and some acquaintances of the defendant and his brother who were at the club that night. Other witnesses, not eyewitnesses to the homicide or the circumstances prior to the homicide, included law enforcement authorities and an expert witness, a criminalist, *321 who testified to the effect that the alleged victim was killed by some pellets from a shotgun shell from the shotgun fired by defendant.
The agreement among the witnesses generally as to many of the facts as indicated above is in marked contrast with their disagreement as to some of the other material facts. Witnesses for the State testified that defendant’s conduct while in the club was greatly disruptive and annoying to employees and customers; witnesses for the defendant, including defendant himself, testified to the contrary. Witnesses for the State testified that appellant left the club of his own volition soon after his brother left the club and that the mace that was sprayed in appellant’s face by the victim and the kicking of the appellant by another bouncer had not occurred at that time. Their testimony was that the spraying of the mace in defendant’s face, and the kick administered to him, occurred while the defendant and his brother were attempting to re-enter the club after they had been refused permission to re-enter. Defendant and some of his witnesses testified that there was never any effort by defendant to re-enter the club and that the spraying of the mace in defendant’s face, and the assault on defendant’s brother by one of the bouncers, occurred while defendant and his brother were in the process of being ejected from the club. Witnesses for the State testified that defendant and his brother left in their automobile which was in the parking lot of the club and in about forty-five minutes returned to the parking lot in the automobile, and, while in the vicinity of the front door of the club, defendant fired at least two shots[1] from a shotgun pointed in the direction of the door where the victim was when he was killed. Defendant and some of his witnesses testified that they did not leave the parking lot before the shooting occurred, that they made no attempt to return to the club, that defendant was in pain from the mace in his face that required washing his eyes and face and that soon thereafter they were in the process of leaving the premises, or the general area of the premises, of the club, when defendant fired the shotgun, after the alleged victim had shot two shots at defendant and his brother. They left the general area in their automobile and were apprehended soon thereafter by law enforcement authorities.
The first three paragraphs of the argument in appellant’s brief are as follows:
“The single issue presented for review on this appeal is whether the trial court should have allowed into evidence a prior specific act of the deceased.
“In this instance the Defendant shot the deceased after having had MACE sprayed in his face and had been fired upon by the deceased. (T.R. 229). The deceased had been involved in an incident on December 10, 1980, wherein the facts were almost identical. He had been involved where MACE was sprayed in a man’s face and shot in the back after a very minor disturbance at the same club. (T.R. 228).
“The law in Alabama is clear on this point in holding that prior actions are not admissible. Hall vs. State, [Ala.Cr.App.], 375 So.2d 536 [1979], Though the reputation of the murder victim for turbulence, violence and bloodthirstiness is admissible to show that the killing was in self-defense, Bankston vs. State, [Ala.] 358 So.2d 1040 [1978].”
The next sentence of appellant’s brief is thus stated:
“Your appellant urges this court to make an exception to the rule which prohibits the admission of prior specific acts of the deceased ...”
The remainder of the brief is devoted to a serious effort to effectuate “an exception to the rule,” or as Judge Bookout expressed it, in Hall v. State, supra, at page 538, “That an exception should be carved out of the . .. rule.” As much as we might have been disposed to do so at times, cer *322 tainly extremely rare, if we could, it is not for us to attempt to change the law as declared by the Alabama Supreme Court. Nevertheless, we are emboldened, by appellant’s insistence upon a careful consideration of the proposition he advances, to express our views as to it.
In Hall v. State, supra, appellant sought to show a basis for an exception to the governing principle of evidence that “prior crimes of the victim” are not admissible in evidence at the instance of the defendant in a homicide case, by showing that illegal evidence of the prior crimes by defendant had been admitted against him. The effort to obtain an exception to the governing principles was rejected for two reasons: (1) it would have been repetitious of evidence already admitted of “prior crimes of the victim,” and (2), citing Gamble, McElroy’s Alabama Evidence, § 14.01 at page 13, the doctrine of “curative admissibility” is limited to the “extent that it cures the effect of the admission of the first illegal evidence.” Appellant does not claim any support in Hall v. State, supra, for his advocacy of the admissibility in evidence of any prior crimes of the victim, but he seems to think that the rejection by the court, on the grounds stated, of appellant’s contention therein that such evidence was admissible, opens the road for him to argue effectively in favor of the admissibility of the proposed evidence. In doing so, he attempts to analogize the proposed exception to one or more of the recognized exceptions to the general rule of exclusion of an accused’s commission of other crimes, as set forth in various Alabama cases on the subject and in Gamble, McEl-roy’s Alabama Evidence, §§ 69.01-70.-01(28). Appellant expressly refers to only two groups or categories of exceptions, namely, identity and plan, design, scheme or system. He does not discuss, and we see no possible applicability of, the identity exception, as there is no semblance of any dispute as to the identity of either the victim or the defendant. As to the other suggested exception, he quotes:
“Evidence of the accused’s commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime were committed in keeping with or pursuant to a single plan, design, scheme or system. This rule is applicable whether such plan, design, scheme or system is narrow and specific in scope or is measurably broad and general in scope.” Gamble, McElroy’s Alabama Evidence, § 69.-01(6) (1977)
To the material just quoted, should be added what Judge McElroy states as to the exception of “plan, design, scheme or system” in homicide cases at § 70.01(12)(d):
“In a homicide prosecution, the State is permitted to show another crime committed by the accused, prior or subsequent to the now-charged crime, if both crimes are part of a general plan, design, scheme or system. A variant of the common plan or scheme exception is the principle which permits the State, in a murder prosecution, to prove prior attempts by the accused to kill the victim of the now-charged crime.”
It may be difficult to account for the scarcity of precedents as to the admissibility of evidence of prior crimes by a victim as contrasted to the great number of precedents as to the admissibility of prior crimes of a defendant in criminal cases, but we suggest that the innumerable precedents as to the latter are largely by reason of the proper protection of the defendant against an untrue verdict in a criminal case by reason of his having committed other crimes. However, it is readily to be seen that it is only when the commission by defendant of other crimes has genuine probative effect as to the question of defendant’s guilt or innocence that the proposed evidence is admissible. We are convinced that the proposed evidence in the instant case was utterly irrelevant and immaterial to the question of the guilt or innocence of the defendant as to the express charge of the indictment, or as to any lesser included offense. There is no contention that either defendant or his brother knew or had been informed at the time of the homicide that the victim had sprayed mace in the face of *323 another person and had thereafter shot him. Appellant does not question the soundness of the principle that proof of the victim’s reputation for violence and the like is limited to evidence as to his general reputation therefor.
We are in disagreement with appellant’s contention that “the trial court should have allowed into evidence a prior specific act of the deceased,” the only “issue presented for review on this appeal.” The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.

. There was some confusion and uncertainty as to how many shots were fired from the shotgun. Defendant stated that three were fired. There was some evidence that five were fired. There was also evidence that defendant’s brother fired a pistol.