LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence for the possession of marijuana. A jury had found defendant guilty, and the trial court fixed his punishment at imprisonment for six years. On the sentence hearing, it was shown that he had been previously convicted of possession of marijuana for his personal use only.
Although appellant does not question the sufficiency of the evidence to support the verdict, we think a brief resume of the evidence is appropriate for a better understanding of the five issues presented by appellant.
According to the testimony of Officer Bill Shaw, chief deputy sheriff of Coving-ton County at the time of his testimony, he was on routine patrol duty as an investigator with the Opp Police Department on June 17, 1982, on a dirt road near Highway 331 and was accompanied by an Alabama state trooper when they observed an automobile parked on the side of the road that was occupied by a woman driver, whom Officer Shaw knew, and a small child. He was told by the woman that her husband, whom Officer Shaw also knew, was out in the woods. Soon thereafter, the woman’s husband and another man came out of the woods. Soon thereafter, a red and white van” came on the scene, which Officer Shaw flagged down. He testified:
“Q. After you got up to the van there, what did you do next?
“A. I observed the occupants and contents in the vehicle.
“Q. And, what did you observe in the vehicle besides the occupants?
“A. At that time, in my opinion, it was a stack of marijuana, cannabis plants, in the rear.
“Q. And, who were the occupants of that vehicle?
“A. Paul Joseph Finedore and Stephen Franklin Yancey.”
The defendant took the stand and set forth clearly in his testimony that he did not place the marijuana plants in the van he was riding in when stopped by Officer Bill Shaw. He testified that the van belonged to him and that it was being driven at the time by Paul Finedore, whom the defendant had picked up in Opp, where defendant lived, earlier that day and the two had gone to the river where they had previously set out some lines with baited hooks thereon to catch fish in the river, to which lines and hooks they returned to procure their catch a short while before they were stopped by Officer Shaw. The transcript does not seem to show the name of the river, but the writer believes that it was the Yellow River, which flows gently near the western edge of Opp on its way to the bay north of Pensacola and which, to the happy recollection of the writer as a youth, abounded with fish — catfish, bream *688 and bass. Defendant said he did not ever see the marijuana plants in the van, which according to the undisputed evidence and according to a photograph of the marijuana plants in the van, could have been readily seen from the open back door of the van but that it could not be observed by anyone while the back door was closed except by persons sitting in one of the two bucket seats, including the driver’s seat, located in the front part of the body of the van. He further testified that while he was attending to his part of the fish hooks he observed a pickup truck come close to the van and heard "the door open and shut” but did not “go up there when” he “heard that noise.” When he and Finedore finished baiting the hooks, they went back to the van, Finedore got in the driver’s seat, the defendant got in the other seat without looking in the back of the van. He testified that one of his hands had been injured prior to June 17, 1982, that it was still in a cast or splint, which to some extent impaired his driving capacity.
I.
By the first issue presented in appellant’s brief, he asks the question: “Did the Trial Court err in allowing into evidence transcribed testimony from the trial of another Defendant?” The brief sets forth the ruling or rulings of the court on the point as shown by the following portion of the court reporter’s transcript:
“MR. LOGGINS [District Attorney]: Your Honor, at this time I would like for this witness to remain on the stand if he could to read Fred Burdick’s prior testimony — to assist me in reading Fred Bur-dick’s prior testimony — that was given in the Paul Finedore trial due to Officer Burdick’s unavailability.
“MR. PRESTWOOD: And, we object. It has not been properly predicated for such a substitution of a witness’ testimony- ,
“THE COURT: Overruled.
“MR. PRESTWOOD: And let me get my specific grounds in there. He is dealing strictly with hearsay. And, Your Honor can’t accept hearsay in a case like this. He hasn’t said that he is a physician or he has been down there to talk to him. He doesn’t have anything direct from the facts that he is talking about.
“THE COURT: Overruled. I am assuming, I do not know what you are offering, but I will limit it to the chain of custody of the material taken from the van.
“MR. LOGGINS: Yes, sir, it is only offered to prove the chain of custody.
“THE COURT: AH right.
“MR. PRESTWOOD: We add the further ground, Your Honor, that he could have taken the deposition of the witness. He knew when this case was set before Mr. Burdick went in the hospital.
“THE COURT: Overruled. You may proceed.”
From the court reporter’s transcript of the proceedings in the instant case as she testified from her transcript as court reporter in the other case, it is clear to us that Officer Burdick’s testimony was addressed solely to the question of showing an unbroken chain of custody of a portion of dried remnants of the marijuana plants found in defendant’s van from the time they were found until the portions thereof constituting State’s Exhibit B in the instant case were delivered to Mr. Joe Saloom, a crime laboratory analyst of the Alabama Department of Forensic Sciences, Enterprise Division, who testified on call of the State in the instant case in part as follows:
“I found that the green dried plant material was marijuana. It’s weight in grams was 1001.9, which translated to ounces is 33.35 or in pounds, 2.21.”
We are not in entire accord with appellee’s response to the first issue presented by appellant, to the effect that the testimony of Officer Burdick in the former trial, particularly as to whether the testimony introduced in the instant case met the requirements as to identity of or relationship between the parties in both cases, as comprehensively covered in Gamble, McElroy’s Alabama Evidence, § 245.-07, cited by appellee. However, we do agree with the following concluding sen- *689 tenee of appellee’s argument on the point: “Furthermore, any error claimed by appellant should be considered harmless since the testimony in question was only offered to establish the chain of custody even dismissing the statements of the absent witness.” The testimony of Officer Burdick on the trial of Finedore was of little, if any significance, as to the issue of defendant’s guilt or innocence of knowledgeable possession of marijuana. There is no contention on appeal that there was not sufficient evidence to support the verdict or that the former testimony of Officer Burdick received in evidence in the instant case had any influence whatever on the jury in its determination that defendant was guilty.
II.
The second issue presented by appellant is related to appellant’s first issue. By Issue Two appellant challenges the admission into evidence of State’s Exhibit B, a portion of remnants of the marijuana plants found in the van of defendant, which was subjected to chemical analysis by chemical analyst Joe Saloom. Appellant relies upon the quoted testimony of Police Chief Jerry Brannon, who said upon direct examination that the material did not seem to be altered, but on recross-examination on the point said, “No, sir,” in reply to the question, “But, you don’t know that do you, Chief?” It-should be stated that counsel for appellant also states that the witness, Ray Bozeman, Circuit Clerk, also testified on cross-examination as follows:
“Q. Could you say with complete confidence and accuracy that it is in the same condition there, the same way it was the first time it was brought in your office?
“A. It is not the same because extra tape has been added to it.”
In our opinion, the trial court was not in error in its ruling that State’s Exhibit B could be received in evidence. In this connection, however, we note that oft-times there is presented on appeal the issue as to whether, in prosecutions under the Alabama Controlled Substances Act, exhibits containing some of the substance that is alleged to have been possessed or sold by defendant should be admitted in evidence, but seldom, if ever, has there been an occasion in which the actual introduction thereof into evidence served any useful purpose. Almost invariably it is not introduced for the purpose of minute examination by the trier of facts, who generally would not be qualified to say whether or not it was the prohibited substance charged, and there has been little, if any, occasion on the part of an appellate court to examine or have such exhibit examined to determine its chemical analysis. We can assume, we think, that the actual contents of State’s Exhibit B had no influence on the jury, and are hopeful that in the future unnecessary controversies on issues similar to appellant’s Issue Two in the instant case can be avoided.
III.
Appellant insists that the trial court erred in sustaining the State’s objection to the offer into evidence by the defendant of “the indictment and verdict in the case against Paul Finedore” where Finedore had been arrested with the Defendant and the prosecution had already introduced the transcribed testimony from Finedore’s trial. In concluding his argument on the point, appellant’s counsel states: “The Trial Court held the Defense to one standard regarding the Finedore trial and the State to another.” Although, as indicated above, there was little, if anything, to be gained by the State in its introduction into evidence of the testimony of a witness for the State in the Finedore trial, we do not agree with appellant’s conclusion in his brief that the indictment and verdict of the jury in the Finedore case should have been admitted in evidence in the instant case, as “The obvious point to be made [was] that the prohibited substance belonged to Fine-dore.” It is true that in many criminal cases the conviction of one defendant for a particular crime is inconsistent with the conviction of another defendant for the same crime. On the other hand, in many criminal cases it is made clear that two or *690 more defendants are guilty of the same crime. There was never any contention in the instant case by the State that defendant was the sole possessor of the marijuana found in his van. The trial court was correct in sustaining the State’s objection to the defendant’s offer to prove the indictment and verdict in the Finedore case.
IV.
During the cross-examination of Mr. Joe Saloom, who testified as an expert that State’s Exhibit B contained marijuana, he testified:
“Q. Do you know anything about soil samples?
“A. I know a few things about it.
“Q. Well, let’s assume that a marijuana plant was pulled from Conecuh County and one was pulled from Covington County and one was pulled from Alaska. Do you have enough knowledge of soil types to say whether you could trace substantially what kind of soil it came from?
“A. I don’t have that knowledge.”
Mr. Saloom further testified that there was an analyst, whom he named, that worked under Mr. Saloom at the laboratory at Enterprise that analyzed soil samples. Mr. Saloom testified:
“Q. Based on what you know of his performance of his duties under your direction and supervision, could he have taken a soil sample from either one of these plants and reached some conclusion as to what kind of soil it was and where it might have come from?
[[Image here]]
“A. As far as I know he could determine what the components of the soil were.”
Mr. Saloom further testified that no one connected with the District Attorney’s office or “the Police Department at Opp,” had ever asked Mr. Saloom “to have" the named analyst who could determine what the components of the soil were “to do a soil test on the soil that was attached to the root systems of these particular plants [marijuana plants found in the van].” Appellant argues that the trial court erred in prohibiting the defense from making a closing argument relative to soil samples. The contention is apparently directed to the following, which occurred during the closing argument to the jury of one of the attorneys for the defendant, as shown by the following portion of the transcript:
“MR. PRESTWOOD: I was obviously disappointed in Mr. Saloom’s attitude about the soil samples. And he has got a man over there, paid by the taxpayers, to make soil tests. To identify soils. And in this case, if they had carried the full plants with the dirt on the roots and let that man make a soil test it might have helped in the investigation to know where the stuff came from.
“MR. LOGGINS: We object, to that argument about soils. It is mere speculation. There is evidence from the witness stand that they could determine where it came from.
“THE COURT: I will sustain it on the basis of this, that where it came from would be immaterial. I would sustai' the objection to the soil sample.
“MR. PRESTWOOD: We respectfully except and remind the Court that we went into detail with Mr. Saloom on the question of soil identification. Are you saying that I can’t argue about the soil identification?
“THE COURT: I am just saying that the argument as presently constituted I consider it objectionable and I sustain the objection. (After which Mr. Prestwood continued with his closing arguments to the jury in behalf of the Defendant).”
It may well be that the trial court held the reins too tight on defendant’s counsel in his attempted argument as to the failure of someone connected with the prosecution to have had soil tests made of the soil on the roots of the plants involved, but we are persuaded that no error prejudicial to defendant resulted from the trial court’s ruling on the point. It is not clear to us what defendant’s attorney thought would have been beneficial to defendant by a ruling from the court overruling, instead of sus *691 taining, the State’s objection to the particular argument of defendant’s attorney as shown above. On the whole, we think that defendant and defendant’s attorneys made clear their position that regardless of where the marijuana plants were grown, whether near the banks of the Yellow River, or in Conecuh County beyond the Cone-cuh River, or even in Alaska, which was mentioned by defendant’s attorney, defendant did not knowingly possess any of such marijuana. A soil analysis would have shed no light on that question.
V.
After the trial court had completed its oral charge to the jury and just before the jury left the courtroom to commence deliberations, counsel for defendant stated: “We except to the Court’s refusal to tell the jury what the penalty would be in this case.” By the fifth issue presented by appellant, it is contended that the court “erred in failing to inform the jury of the range of punishment for the crime of possession.” In appellant’s brief, it is argued that “since there was evidence that the defendant had been previously convicted of a misdemeanor possession of marijuana ... the jury was left with the impression that the possession was only a misdemeanor offense.”
The premise just quoted in appellant’s argument is correct, but the quoted conclusion does not necessarily follow. The trial court was not in error in declining to inform the jury of the range of the statutorily prescribed punishment, the fixing of which was in the exclusive province of the trial judge.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.