The appellant, Ronald Ray Fordham, was indicted for the murder of Allen White. He was subsequently tried and convicted, and was sentenced to a term of life imprisonment.
The record indicates that the appellant and White had a history of violent confrontations with each other. Testimony indicates that on the first such occasion, the appellant stopped his truck to give White a ride. After White got in the truck, he asked the appellant if he could have a beer out of a case of beer which was located in the bed of the truck. Appellant told White that the beer was not his. At this point, White reached in his back pocket or in the back of his belt and pulled out a .38 caliber pistol, which he pointed at the appellant.
On the second occasion, the appellant stopped his truck on the side of the road to speak to a "friend" named Gary Richard Morgan. Clarence Price and White were with Morgan at this time. Testimony by Morgan and appellant indicates that soon after he stopped and they started talking, White and Price attacked appellant. Appellant was knocked to the ground, where, he testified, that he could "feel the guys beating the soup out of me." Appellant apparently lost consciousness, and when he regained it, White had a knife at his throat. White then went around the truck and took out Morgan's 16 gauge shotgun and White was told by Price that "You're a chicken son-of-a-bitch if you don't shoot him." Appellant testified that he feared for his life but that Morgan grabbed the shotgun away from White.
A third confrontation occurred on the same night as the second incident mentioned above. Testimony indicates that appellant was at home with his wife when White burst through his door. Appellant's wife asked White what was wrong and he said, "Shut up, you bitch." Appellant *Page 33 
asked White to apologize to his wife and he responded that he was not going to apologize "to no God damn body." Appellant and White then got into a fight. Appellant apparently got White into a choke hold, forced him to apologize to his wife, and then forced him to leave. White, soon thereafter, returned and pulled a knife on appellant. Appellant was able to convince him that he should leave.
Testimony indicates that during each of the above mentioned altercations, testimony indicates that White was intoxicated and appellant was unarmed. It is also established that White had a general reputation in the community for committing violence when he was intoxicated.
On October 18, 1984, appellant took his wife, who was eight and a half months pregnant, to pick up her car from his father's house. Appellant had been married to her once before for a period of six or seven years, and then they had divorced. She then married Allen White's father and was married to him for one year before they divorced. At the time of this incident she was again living with appellant as his common law wife and had been for some months.
Appellant and his wife stopped at the Hilltop service station, which is directly across the street from his father's house, so that he could put gas in his van. White, who was intoxicated, approached appellant and told him that he wanted to talk to him. Appellant told White to go ahead and talk, but White said that they could not talk at the service station. White asked appellant if he would be home later and appellant responded that he would. Appellant then left with his wife.
The appellant then took his wife across the street to pick up her car. After doing so, they proceeded home with appellant in the lead.
Appellant testified that, upon arrival at his home, and while his wife was still driving up the driveway, he got out of his van and went up to his door to unlock it. Just as he reached his door and was about to unlock it, he heard White say "Don't you open that God damn door." White had been driven to appellant's cabin by Robert McElroy and Mark McElroy, who both remained seated in their car.
Apparently, appellant's wife drove up in the meantime. She testified that White asked her "nice" how she was doing, and then asked her if their dog would bite. She said that when she told him that it would not, he then turned around to face appellant, and that, as he turned his whole facial expression changed" and he then approached the appellant.
Appellant then talked to White from a distance and repeatedly asked White to leave, but White stated that he would not, and that they had a score to settle. Appellant turned his back and walked into the house and picked up his 30.06 rifle from behind the door.
When appellant emerged from the house with the rifle, he again asked White to leave and told him that he did not want any trouble. When White refused, appellant fired a "warning shot" to the right of White's feet. Appellant again asked White to leave, and he responded, "I ain't got to do a damn thing."
White then stated, "Me and my Daddy's going to settle this with you once and for all." White, who had been holding his hands behind his back during the entire conversation, then took a step towards appellant, and appellant shot and killed him. White was unarmed.
Appellant was subsequently convicted of murder and was sentenced to life imprisonment. It is from this conviction and sentence that he now appeals.
 I
The appellant contends that his sentence of life imprisonment is excessive. In view of the considerable evidence on self-defense, it may appear that the punishment is too severe; however, we note that murder under § 13A-6-2, Code of Alabama 1975, is a Class A felony. Section 13A-5-6, Code of Alabama 1975, provides that a Class A felony in which a firearm is used requires a minimum sentence of 20 years *Page 34 
and carries a maximum of life imprisonment.
When a sentence imposed by the trial court is within the minimum and maximum range provided by our statutory law, this court will not overturn the sentence unless there is clear abuse by the trial court. Tombrello v. State, 421 So.2d 1319
(Ala.Cr.App. 1982); Williams v. State, 456 So.2d 852
(Ala.Cr.App. 1984).
 II
Appellant next contends that there was a lack of evidence to show that he had an intent to kill White. Intent to kill can be inferred from the character of the assault, use of a deadly weapon and other attended circumstances. Fears v. State,451 So.2d 385 (Ala.Cr.App. 1984); Johnson v. State, 390 So.2d 1160
(Ala.Cr.App.), cert. denied, 390 So.2d 1168 (Ala. 1980); Tuckerv. State, 383 So.2d 579 (Ala.Cr.App.), cert. denied383 So.2d 586 (Ala. 1980).
In this case, we believe that the necessary intent to kill can be inferred from the fact that appellant had already fired a "warning shot" at White's feet, the fact that the second shot came after White stepped toward appellant, and the fact that to accomplish the second shot, the appellant had to raise the rifle from some downward pointing position to point it at White.
 III
Appellant contends that the trial court erred in restricting defense counsel from arguing the punishment aspect to the jury. Punishment in non-capital cases is properly left to the discretion of the trial judge. It should not be argued to the jury. Warden v. State, 468 So.2d 203 (Ala.Cr.App. 1985); Pruittv. State, 457 So.2d 454 (Ala.Cr.App.), cert. denied,457 So.2d 456 (Ala. 1984); Yancey v. State, 446 So.2d 686 (Ala.Cr.App. 1983).
 IV
Appellant contends that it was error for the trial court to reserve a ruling regarding the admission of evidence derived from White's autopsy which indicated his degree of intoxication. The record, however, fails to show any instance where appellant attempted to introduce this information at trial. Without such an attempt, and a formal ruling by the trial court, there is nothing for this court to review. If appellant had attempted to introduce this evidence, it would have been relevant on the issue of self-defense. Wood v. State,347 So.2d 1001 (Ala.Cr.App.), cert. denied, 347 So.2d 1005
(Ala. 1977).
 V
Appellant contends that the trial court erred in granting the State's challenge of prospective jurors. Debra S. Lovell and Violet Smith. The trial court apparently granted the State's challenges to both jurors because both jurors indicated that they would be unable to follow the court's instructions regarding the applicable burden of proof, and stated that they could not convict the appellant unless they were "100%" convinced of his guilt. It is fundamental that the applicable burden of proof on the State in a criminal trial is proof beyond a reasonable doubt of every material ingredient of the crime charged. Piano v. State, 161 Ala. 88, 49 So. 803 (1909);Robertson v. State, 36 Ala. App. 117, 53 So.2d 575, cert. denied, 256 Ala. 113, 53 So.2d 576 (1951).
Where, as here, jurors insist on following their own burden of proof requirements and are unwilling to follow the instructions of the trial court, they may be properly challenged. Here, we find no error by the trial court in granting the challenge.
 VI
Appellant next contends that the trial court erred in denying defense counsel's challenge of juror Tucker. The applicable portion of the record was as follows:
 "MR. WOODROW: Your Honor, for — if we can reopen this we would also move to challenge Steve Tucker, the police officer who stated because he was a law enforcement official he couldn't render a fair and impartial verdict. *Page 35 
 "THE COURT: He didn't state that. I asked him that and he said no, that isn't what he said.
 "MR. WOODROW: He did state that because he was a police or law enforcement official he shouldn't sit on the jury.
 "THE COURT: Officer Tucker, step up here, just a minute, please.
 "(Whereupon Prospective Juror Tucker approached the bench and the following was had outside the hearing of the Jury Venire.)
 "THE COURT: Why is it you feel like you shouldn't sit as a juror on this case?
 "PROSPECTIVE JUROR TUCKER: I just feel like a law enforcement person shouldn't sit on a jury.
"THE COURT: Why?
 "PROSPECTIVE JUROR TUCKER: That's just the way I feel. But I could give a fair verdict either way. That's just the way I feel, Judge.
"THE COURT: I mean, any reason for it?
 "PROSPECTIVE JUROR TUCKER: Huh-Huh. Just because I'm a law enforcement officer, I don't think I should sit on a jury. (Negative.)
 "THE COURT: Okay. But you do feel like — first of all, you don't have any independent knowledge of the facts of this case?
 "PROSPECTIVE JUROR TUCKER: Huh-huh. Just, you know, hearsay. (Negative.)
 "THE COURT: Okay, you feel like you could sit as a juror and listen to the evidence and the testimony and be fair and impartial in your consideration of all of that and then take the law that I give you and apply it to the facts of the case?
"PROSPECTIVE JUROR TUCKER: Yes, sir.
"THE COURT: And give a fair and impartial verdict?
"PROSPECTIVE JUROR TUCKER: Yes, sir.
 "THE COURT: You've just got — you've just got some philosophical feeling that a policeman should not be on a jury?
"PROSPECTIVE JUROR TUCKER: That's right, sir.
 "THE COURT: Okay, thank you. Have you got any questions?
"MR. HUBBARD: No, sir.
"THE COURT: Have you got any?
"MR. WOODROW: No, sir.
 "(Whereupon Prospective Juror Tucker returned to his seat and the following was had outside the hearing of the Jury Venire.)
"MR. WOODROW: I would renew the challenge, Judge.
 "THE COURT: All right, it will be denied. To exempt a class from jury service is unconstitutional. . . ."
The record clearly indicates that juror Tucker stated that even though he did not want to be on the jury, he "could give a fair verdict either way." Where no other reason, other than the fact that he was a police officer, was given to explain his desire not to be on the jury, we must agree that he could not properly be challenged.
 VII
Appellant contends that the trial court erred in allowing testimony concerning the fact that White had at some time suffered a broken neck which had left him with a "stiff neck." We find no error in allowing this testimony into evidence. "[I]t has been uniformly held that in a homicide case in which self-defense is relied upon by defendant, the physical condition of the victim is admissible in evidence. Nixon v.State, 261 Ala. 74, 72 So.2d 846; Smith v. State, 209 Ala. 666,96 So. 779." Chavers v. State, 57 Ala. App. 268, at 271,327 So.2d 762 (Ala.Cr.App. 1976).
 VIII
Appellant contends that the trial court erred in sustaining the State's objection to the question posed by defense counsel to Robert McElroy which asked if he had ever seen Allen White act in a violent fashion toward anyone prior to the day in question.
In murder cases such as this, where the defendant argues self-defense, both the State and the defendant may prove the prior difficulties between the victim *Page 36 
and the defendant. Caylor v. State, 353 So.2d 8 (Ala.Cr.App.), writ quashed, 353 So.2d 11 (Ala. 1977). Evidence of the victim's prior specific acts of violence against third persons is inadmissible, except that testimony can be received indicating that the victim had a bad general reputation for disturbing the peace and quiet and for violence. Jackson v.State, 423 So.2d 320 (Ala.Cr.App. 1982); Tate v. State,337 So.2d 13 (Ala.Cr.App. 1976); White v. State, 294 Ala. 265,314 So.2d 857, cert. denied, White v. Alabama, 423 U.S. 951,96 S.Ct. 373, 46 L.Ed.2d 288 (1975).
We note, as set out above in the facts, that extensive testimony was allowed regarding past difficulties between the appellant and White, and that this was proper. However, the trial court correctly denied the appellant's attempt to elicit testimony regarding White's difficulties with third persons. The record reveals that Robert McElroy was allowed to testify as to the victim's general reputation in the community for violence.
 IX
Appellant next objects to a series of questions which the State posed to witness Lisa White. The applicable portion of the record is as follows:
 "Q Just answer the question. Were you concerned for his safety at that time?
 "A I didn't know what was going to happen. I really can't answer because I don't know.
 "Q Well, if you can't answer — You really didn't think at that time his life was in danger, did you?
 "A Well, I didn't know what was going to happen at that time.
 "Q I know that, that you didn't know what was going to happen and therefore you didn't have any specific —
 "MR. WOODROW: Your Honor, I'm going to object to this line of questioning. He is berating the witness.
 "MR. HUBBARD: I'm not berating — I'm trying to ask her a question.
 "MR. WOODROW: She's not on trial today. She can't place herself in somebody else's shoes and know what he was concerned about.
"THE COURT: That's not his question. Overruled.
 "Q What I'm saying, Mrs. White — And I'm not trying to confuse you or berate you — I'm just asking you the question. At that particular time when Ronald Fordham went into the house did you in your own mind have any particular idea that his life was in jeopardy?
 "MR. WOODROW: I object, Your Honor. His question is irrelevant.
"THE COURT: Overruled.
". . . .
 "Q All right. You said it surprised you when Ronald came out with the gun?
"A Yes.
 "Q So that at that particular time you didn't feel like Ronald Fordham or yourself or your unborn child had been subjected to any threats by Allen White that would in fact possibly lead to serious bodily harm to you, your child or to Ronald Fordham?
 "MR. WOODROW: Your Honor, I object to the question. It calls for an answer that's irrelevant and immaterial. She was not standing in Ronald Fordham's shoes at that time.
"THE COURT: He's not asking her that, Mr. Woodrow.
"MR. WOODROW: I think he is, Your Honor.
 "THE COURT: It's my understanding of his question he is not. Overruled."
A review of the record clearly indicates that the witness was asked this series of questions only with regard to her own state of mind at the time just prior to the shooting incident. As such, the question was proper, and the trial court correctly overruled appellant's objection.
 X
The appellant next contends that the trial court erred in its instructions to the jury regarding the self-defense issue at that point where he said the following:
 "The law is based not only on what the Defendant himself subjectively believed, *Page 37 
but it's also based upon what a reasonable and prudent person in the Defendant's shoes would have also believed. So not only must the Defendant himself believe that he was in imminent danger of the infliction of death or serious physical injury, but a reasonable and prudent person would have had a like belief under all the circumstances attendant to the particular incident."
The appellant specifically argues that he should not be judged on the reasonably prudent person standard because he had an I.Q. of 67. This issue regarding his I.Q. was not raised until the sentencing phase of the trial. Any issue such as this regarding diminished capacity should have properly been raised during the trial phase. No error can be assigned to the trial court for not charging on an issue which had never been raised. Furthermore, we have reviewed the entire charge on self-defense and find that it fully and adequately informed the jury of the defense as provided by § 13A-3-23, Code of Alabama 1975.
For the foregoing reasons we find that the judgment of the trial court must be affirmed. We note, however, that failure to offer proof of the appellant's low I.Q. as relating to his belief that he was in imminent danger, and failure to offer proof of the highly intoxicated condition of the deceased may be the subject matter of other post-conviction proceedings. Further, we observe that because of the nature of this case, it appears that appellant would be an excellent candidate for parole proceedings at the earliest possible time.
AFFIRMED.
McMILLAN, J., concurs.
BOWEN, P.J., and TYSON and PATTERSON, JJ., concur in result only.