TYSON, Judge.
Rosetta White was charged in a two-count indictment with intentionally and *446 recklessly causing the death of Tommy Rodgers in violation of § 13A-6-2, Code of Alabama (1975). The jury found the appellant guilty of the lesser-included offense of manslaughter. The trial judge sentenced the appellant to ten years’ imprisonment in the penitentiary.
Because the appellant does not raise the issue of sufficiency of the evidence on appeal, the facts will be summarized briefly.
On the night of August 7, 1987, around midnight, the decedent, Rodgers, and Roosevelt Turner walked out onto the porch of the “skin house” where they had been drinking and gambling. When they walked out they saw the appellant and Cynthia Simmons standing on the porch. The decedent and Turner began walking down the steps. At this point the decedent or the appellant said, “Son of a bitch, lucky you ain’t dead.” (R. 21, 81) and “Motherfucker you supposed to be dead.” (R. 81) The decedent then stopped and stood still for a moment. Turner testified that he told the decedent, “Let’s go, let’s leave it alone.” (R. 36)
Testimony showed that the decedent went towards the appellant to grab her because he knew she had a gun in her purse. They began to scuffle and in the process three to six shots were fired. Testimony from the State’s witnesses tended to show that the appellant began the shooting. One bullet hit Mr. Turner in the leg. The appellant was also hit in the stomach by one of the bullets. As a result, she has to wear a colostomy bag. The decedent was hit with two bullets. After he was shot, he went down the steps and fell down.
Officer Jimmy Lloyd Pace of the Montgomery Police Department said he responded to a call at 570 Pleasant Avenue on the night in question. When he arrived, he found the decedent Rodgers lying on the ground next to a truck. There was a revolver a few feet away from him. The decedent died as a result of á gunshot wound to the abdomen.
The appellant, White, said that she was standing on the porch talking when the decedent came out of the house. She thought he went past her and down the steps. When she realized that he had not, she turned to face him. She stated that he told her, “You a lucky mother-fucking lady to be alive.” (R. 177). She asked him what he meant and he repeated his statement.
Then the decedent asked, “What you got in that purse?” (R. 177) and proceeded to break the purse strap and get the gun out. The appellant testified that the decedent, Rodgers, reached for the gun, pulled the trigger and shot her in the stomach. She continued to struggle with him to keep him from shooting her again. Appellant said that she “got real weak and just let go of his hand and everything let go.” (R. 177). She then went inside the house and the paramedics came.
The appellant denied having any intent to kill Tommy Rodgers and testified that, had she intended to kill Rodgers, she would have had several opportunities prior to the actual shooting. She said her actions were an attempt to keep him from shooting her a second time. She stated that she never pulled the trigger but held her hands on his hands, which held the gun.
I
The appellant contends that the trial court erred when it instructed the jury that a reasonable doubt is a doubt for which one must find a “real”, “.substantial” or “bona fide” reason.
The appellant argues that requiring the jury to find a “real”, “substantial” or “bona fide” reason to doubt is a substantial doubt or something greater than a reasonable doubt. The appellant asserts that this results in an impermissible reduction of the State’s burden of proving guilt beyond a reasonable doubt. We disagree.
This Court has previously been faced with this very issue. In Williams v. State, 455 So.2d 210, 211 (Ala.Crim.App.1984), the trial court instructed the jury that a reasonable doubt was a doubt based on a “real reason, a substantial reason.”
In Williams we held that, “While the instruction in this case may be subject to criticism, it is not erroneous ... When read *447 in conjunction with the entire oral charge, the objectionable portions were intended to impress on the jury the distinction between a reasonable doubt and a vague, imaginary or possible doubt, and do not constitute error as to require a reversal.” 455 So.2d at 212 (citations omitted). See also Baker v. State, 477 So.2d 496 (Ala.Crim.App.1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986).
After reviewing the court’s oral charge to the jury, as a whole, it is clear that the trial court did not commit reversible error in this instance. We find that the use of “real” and “substantial” to modify “reason” does not change the standard of proof, as appellant alleges, but rather, serves to help explain the difficult concept of reasonable doubt to the jury. Our holding is not altered by the additional use of the modifier “bona fide” since we find it to be synonymous with “real”. Thus we conclude that the trial court properly instructed the jury on the phrase “reasonable doubt.”
II
The appellant asserts that the trial court committed reversible error when it refused to allow into evidence testimony which would show the victim’s bad reputation for violence.
Specifically, the appellant argues the trial court incorrectly refused to allow John A. Adams, the owner of the house where the decedent, Rodgers, was killed, to testify that he had previously warned the deceased not to engage in violent arguments on the premises. The following portion of the record is relevant to the issue:
“BY MR. SIMPSON:
“Q. Tell us your name, please?
“A. John Alexander Adams.
“Q. Mr. Adams, who owns the house at 570 Pleasant Avenue?
“A. I do.
“Q. Were you there back on August 7th, when Tommy Rodgers died?
“A. Yes.
“Q. Did you see Tommy that night?
“A. Yes.
“Q. Did you talk to him that night?
“A. Yes.
“Q. What did you talk to Tommy about that night?
“A. His conduct.
“Q. What about his conduct?
“BY MR. MADDOX: I object, judge this is hearsay, hasn’t been shown to be relevant.
“BY THE COURT: Step in there, ladies and gentlemen, let’s see what this witness has to say.
(Jury out)
“BY THE COURT: All right.
“BY MR. SIMPSON: Your Honor, I expect him to testify — .
“BY THE COURT: Just ask him.
“BY MR. SIMPSON:
“Q. What did you talk to him about,— what type of conduct was it that you needed to talk to Tommy about that night?
“A. About three weeks prior to that incident, he had been arguing with another man up there, and I had talked to him about his conduct before I would let him come back in the house.
“Q. What did you say to Tommy about it?
“A. Well, I just told him I didn’t want any more misunderstanding about anybody up there at the house, I wanted to stop it and not for him to take it all over the house.
“Q. What was this argument about? Were you present when this argument took place?
“A. No, I wasn’t.
“Q. Did you allow Tommy to stay there that night?
“A. . I did.
“Q. Was he drinking?
“A. That, I don’t know. I don’t think so, I don’t know.
“Q. Why were you concerned about his conduct?
“A. Because I didn’t want any disturbance.
“Q. What kind of disturbance did you think would occur?
“A. Same that did.
*448 “Q. The same that did.
“BY MR. SIMPSON: That’s why I am calling him as a witness, Your Hon- or.
“BY THE COURT: Mr. Maddox?
“BY MR. MADDOX: Judge, I object to that. This is basically testifying to two hours before the shooting, not part of the res gestae. He talked to him, I gather because he was saying something like I don’t want a disturbance. Of course that’s not admissible under any theory that I can think of, no exception to the hearsay rule.
“BY MR. SIMPSON: We are presenting a self-defense, Your Honor, and an affirmative defense.
“BY THE COURT: Well, I don’t exactly know where it would tie in.
“BY MR. SIMPSON: Reputation for propensity in the community for violence.
“BY THE COURT: Well, I’ll sustain it, bring the jury back in. One statement or one act cannot be reputation. I’ll sustain it.
(Jury returned.)
(R. 161-164). .
The appellant argues that the decedent had a bad general reputation for violence and, because Adams was aware of the victim’s reputation for violence, he warned him not to engage in arguments or disturbances on the premises. The appellant contends that Adams’s testimony should have been admitted to substantiate her claim of self-defense. We disagree.
In Bankston v. State, 358 So.2d 1040 (Ala.1978), the Alabama Supreme Court recognized that “evidence of the character or reputation of the deceased for turbulence, violence, and bloodthirstiness should be received when it illustrates or explains words or acts of the deceased at the time of the killing, or to show that the killing was in self-defense.” Bankston, 358 So.2d at 1041 (citations omitted) (emphasis added). In Bankston, the Alabama Supreme Court held that the evidence of the deceased’s reputation for violence was admissible.
We believe, however, that Bankston can be distinguished from the case at bar. In Bankston, the issue turned on whether there was sufficient evidence of self-defense to go to the jury. The Alabama Supreme Court found that there was and held that in “all doubtful questions of who is the aggressor, the bad character of the deceased for turbulence and violence should be admitted.” Bankston, 358 So.2d at 1042.
In the instant case the issue is whether the proffered testimony is evidence of the deceased’s reputation for violence, not whether there was sufficient evidence of self-defense to go to the jury.
Like the court in Bankston, we find that there was sufficient evidence presented for the issue of self-defense to go to the jury. The appellant presented testimony from a Ms. Cynthia Simmons and a Sammy Rice, Jr., which tended to show that the decedent was the initial aggressor. Since we find that there was evidence presented on the issue of self-defense, the appellant was entitled to show evidence of the decedent’s reputation for violence in the community.
It is at this point that the instant case differs from Bankston. In the case at bar, we do not find that the testimony of Mr. Adams was evidence of the decedent’s reputation for violence. The record does not reflect that it was Mr. Adams’s awareness of the victim’s bad general reputation for violence that caused him to warn the victim about his behavior. Rather, it is clear to this court that it was a specific incident, which occurred several weeks prior to the date at issue, that caused the witness to reprimand the victim about his conduct on the night in question. As such, this testimony was not admissible.
This court held in Fordham v. State, 513 So.2d 31 (Ala.Crim.App.1986) that “Evidence of the victim’s prior specific acts of violence against third persons is inadmissible, except that testimony can be received indicating that the victim had a bad general reputation for disturbing the peace and quiet and for violence.” Fordham, 513 So.2d at 36 (citations omitted) (emphasis added). See also Evans v. State, 338 So.2d *449 1033, 1036 (Ala.Crim.App.1976) cert. denied 348 So.2d 784 (Ala.1977) (“Reputation or character of the deceased cannot be proved by particular acts or traits of that person.”); Huffman v. State, 360 So.2d 1038, 1044 (Ala.Crim.App.1977) aff'd. 360 So.2d 1045 (Ala.1978). (“The turbulence or bloodthirsty character of deceased cannot be established by particular acts of violence.”)
If the appellant desired to show that the witness based his actions on his knowledge of the victim’s bad general reputation for violence, the questions should have been worded to reflect such. The proper form of the question would have been to ask the witness if he was aware of the decedent’s bad general reputation for violence in the community first, and thus lay a predicate.
In Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666 (1972), we faced a similar issue. In Thigpen we upheld the trial court’s ruling to exclude a defense witness’s testimony about the decedent. In that case we held,
“We do not feel the exclusion of the testimony of this witness was erroneous, as the form of the question was bad in two aspects. First, before a witness testifies to another’s general reputation, ... he must testify that he knows such general reputation, or think he knows such general reputation, ... Here, no such predicate was laid.
“Second, in proving a person’s general reputation, the question should be directed to the ‘general reputation’ or ‘general character’ of such person.... Failure to use the word ‘general’ before ‘reputation’ is improper.... We feel this to be the better rule.” (citations omitted). 270 So. 2d at 677.
In the case at bar, not only did the appellant fail to use the word “general” to qualify reputation, the appellant failed to ask about the deceased’s reputation in any respect.
Because we find this testimony was based on a prior, specific incident involving the victim and a third party, rather than on Adams’s knowledge of the victim’s general reputation for violence, we find that the questions as framed elicit hearsay and are not within any of the exceptions to the rule. As such, it was certainly proper for the trial court to deny the admission of this testimony.
For the reasons stated above, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.