320 So.2d 107

**John Robert GODBEE**

v.

**STATE.**

**3 Div. 378.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Charles C. Carlton, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State, appellee.

HARRIS, Judge.

Appellant was convicted of robbery and sentenced to ten years in the penitentiary. At arraignment, attended by counsel, he pleaded not guilty and not guilty by reason of insanity. After conviction he was furnished a free transcript of the record and trial counsel was appointed to represent him on appeal.

On March 8, 1974, two men robbed the Majik Market on Madison Avenue in Montgomery, Alabama. Mrs. Margaret Louise Ledbetter Cooley was alone in the store at the time. Mrs. Cooley was a school teacher by profession and taught physical education at Carver Junior High School, but during the spring holidays during March of 1974 she was an employee of the Majik Market. She testified she worked the 3:00 to 11:00 shift. She stated that between six and seven o'clock that evening two white men came in the store and one of them picked up a six-pack of beer and brought it to the counter. He appeared to be younger than twenty-one years and she asked to see his ID and he pointed to the other man and he walked over to the sunglasses rack and stood there looking out the window and then looking back. The other man came forward and she asked to see his ID.

"THE WITNESS: He reached back in his back, I thought to get his billfolder, and he pulled a pistol out. And he told me to put all the money in the sack with the six pack of Paps (sic) Blue Ribbon Beer. I opened the cash register and told him he could put his gun up, that I wasn't going to give him any problem; I was scared. I put the money in the bag, and he asked me where the big money was, and I told him that it was in the the safe down on the floor; and he asked me to get down on the floor for fifteen minutes, and I got down on the floor and looked at my watch, because I didn't want to get up too quick. And I was down on the floor, and apparently they left."

At this point Mrs. Cooley made an in-court identification of appellant as the younger of the two men who robbed her on the evening of March 8, 1974.

After the robbers left, she got up and called Police Headquarters. Detective Thomas McLain came to the store and she gave him a description of the robbers. The store manager came and made an audit that night and found over $43.00 missing from the cash register.

Mrs. Cooley then went to Police Headquarters and gave a written statement in which she described the two men. She described appellant as being 5'7" or 5'8" and of average weight. He had dark brown hair that was just above his collar in length. She thought it was a very neat cut at the time and that he was clean looking. He was wearing a sport shirt and sport pants but she did not notice the color at all. She stated that the other man was a much bigger muscular man with a broad neck and he had blondish to red hair that came below his collar in length, and he had a beard. She said he had on a blue denim shirt and dark pants.

Mrs. Cooley was asked to look through a mug book while she was at the station house to see if she recognized the men who robbed her. She viewed a great number of photographs and did not recognize either of the two men. A few days later Detective McLain brought some different photographs to the school where she was teaching and after viewing these photographs, she immediately recognized both men who robbed her.

Detective McLain testified that the two suspects identified by Mrs. Cooley were Robert Godbee, appellant, and one Barry Keen. Mr. McLain further testified that during the course of their investigation he went to Motel 6 on the Eastern Bypass and talked to Jimmy McQueen, the manager of the motel. He was asked the reason he .went to this motel and replied that:

"A   We got a teletype from a detective in Louisville, Kentucky, that stated that two subjects had been arrested for armed robbery. I called the detective and talked to him, and one of the subjects was this gentleman here. They had him."

Appellant objected to this conversation but this objection came after the question and the answer. The objection was overruled, and the judge told the prosecutor to go ahead. Mr. McLain further said:

"A   I called him and talked to him, yes, sir, and I checked at the Motel 6; and after we got photographs, we put them in a mug book, took them out and got this Jimmy McQueen to identify the subjects."

Appellant objected to this testimony and the court sustained the objection.

From the record:

"Q   (By Mr. Dozier)   Based on your information, were you able to determine what type car that Barry Keen and the Defendant were in Louisville, Kentucky?

"A   Yes, sir.

"Q   Will you state whether or not the two cars were identical?

"A   They were in a small sports Chevrolet, and it had a Florida tag on it.

"Q   All right.

"A   And the tag number was registered at the motel; and also, the police department in Louisville, Kentucky gave us a copy of that number.

"THE COURT: You mean registered at the motel here?

"THE WITNESS: Yes, sir.

"Q   (By Mr. Dozier)   Based on your investigation, were you able to determine whether or not more than two people were registered at that motel?

"A   There were two men and a girl, a young lady.

"Q And a girl?

"A Yes, sir.

"Q Were you given a description of this girl?

"A They said that she was short, dark headed, sort of pretty, was the only description that they gave me.

"Q All right. Let me ask you this, Mr. McLain; when you showed Margaret the mug books and she identified the Defendant in this case, did she identify more than one person?

"A Yes, sir.

"Q Who was the other person?

"A It was Keen.

"Q Keen?

"A It was Keen and Godbee, both.

"Q All right, sir. Did she identify anybody else other than these two?

"A No, sir.

"Q It was a positive ID?

"A It was a positive ID on her part, yes, sir."

On cross-examination appellant's counsel brought out all, and more, of the above-quoted testimony.

Appellant did not testify but offered the testimony of an uncle from Georgia who testified that appellant and Keen spent the entire night of March 8, 1974, and, of course, were at his house at the time of the alleged robbery.

■ It is to be noted that most of appellant's objections to illegal questions calling for hearsay testimony were not made until the questions were answered and there were no motions to exclude the answers on the ground of hearsay testimony. Therefore, the objections were not timely made, or were waived. *Barnett v. State,* 52 Ala.

App. 260, 291 So.2d 353; *Lucky v. State,* 50 Ala.App. 324, 278 So.2d 772.

■ The state made out a prima facie case with the testimony of the robbery victim. We have repeatedly held that in our system of criminal justice we do not travel on the numerical number of witnesses. A fact may be established as firmly by the testimony of one witness as by the testimony of an entire community. *Gray v. State,* 38 Ala.App. 508, 88 So.2d 798; *Haggler v. State,* 49 Ala.App. 259, 270 So.2d 690.

■ Alibi testimony, like all other testimony in a criminal prosecution, raises issues for the jury's determination. *Willcutt v. State,* 284 Ala. 547, 226 So.2d 328; *Price v. State,* 53 Ala.App. 465, 301 So.2d 230.

■ The testimony of Detective McLain was, in the main, the rankest kind of hearsay and proper objections thereto should have been sustained. This hearsay evidence would work a reversal of this case except for the following excerpts from the oral charge of the court:

"THE COURT: Ladies and gentlemen of the jury, eradicate from your mind and your thinking any of the testimony given by the Detective McLain, what conversations he had with the officers in Louisville, Kentucky. I'm excluding that from the evidence, and please don't consider it.

The Defendant in this case is charged with the offense of robbery.—Now, ladies and gentlemen of the jury, since I made mention of the fact not to consider or give any weight or consideration whatsoever to any conversation between Detective McLain and the detective or the officer in Louisville, that's not to be considered."

We have carefully searched the record for errors injuriously affecting the sub-

stantial rights of appellant and have found none.

The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.