This is a vehicular homicide case in which Steven Warden, the defendant, was convicted for the manslaughter of Stephen David Pearl. Sentence was eight years' imprisonment. Three issues are raised on appeal.
 I
The defendant argues that photographs of a highway exit ramp were erroneously *Page 204 
admitted in evidence because they were based on the hearsay testimony of the State Trooper who investigated the homicide. We disagree.
On the evening of January 13, 1984, the defendant, James Barnard, and Carol Cunningham were drinking in a lounge in Attalla, Alabama. They left at approximately 2:00 the next morning. Barnard and Ms. Cunningham left together in Ms. Cunningham's Trans Am and the defendant followed in Barnard's pickup truck. The two vehicles entered Interstate 59 going in the wrong direction. As the defendant attempted to pass the Trans Am, he swerved and struck the rear side of the car, and then collided head-on with a Honda Civic driven by Stephen Pearl and in which Samuel Nemroff was riding. The Honda went off the highway, rolled, and caught fire. Pearl died the next day from severe head injuries sustained in the collision.
State Trooper Gerald R. Kuntz investigated the homicide. At trial, he identified several photographs of the Noccalula Falls exit ramp. When the State attempted to introduce those photographs into evidence, defense counsel objected because, among other grounds, they depicted "a scene as there has been no testimony about in this case." Although the trial judge did not rule on this objection, the State volunteered "to develop further testimony." The State then asked the trooper "what exit ramp did your investigation reveal that the vehicles . . . entered onto I-59."
Defense counsel objected "that it's hearsay" and before the trooper answered the question the following occurred:
 "THE COURT: All right. On what facts of your observation did you come to the determination that this exit ramp was used as a means of egress, to get on, by the truck?
 "A. Okay. That — when I talked to both Mr. Warden and Mr. Barnard —"
Trooper Kuntz was interrupted by defense counsel's objection.
 "THE COURT: Was your answer going to be in response to a conversation you had with the Defendant?
 "A. In the investigation of the accident to complete my report.
 "THE COURT: All right. On what facts other than right now, holding that in abeyance a moment, what other physical facts, other than your conversation with Mr. Warden, did you base your conclusion that this was the ramp used?
 "A. Mr. Barnard made a statement to me that that was the way they usually came back.
 "THE COURT: Now, that would be — was this statement made in his [defendant's] presence?
"A. Yes, it was."
Trooper Kuntz testified that the Noccalula Falls exit ramp was approximately one and one-half miles from the scene of the collision. He stated that if they did not use that exit ramp they could have used the Gadsden-Attalla exchange, which was five miles further south, and which would indicate that the defendant traveled on the interstate in the wrong direction for six and one-half miles before the collision.
Later in his testimony, Trooper Kuntz stated that, at the emergency room after the collision, he obtained routine information required on the accident report from the defendant and Barnard. Trooper Kuntz advised Barnard and the defendant that they were free to leave and that they were not under arrest. The defendant cooperated with the trooper "in every way" and voluntarily agreed to submit to a blood test.
The defendant testified in his own behalf. He admitted that he was traveling on the interstate in the wrong direction, although he "thought" he was on the right side. His explanation was that he was just following Barnard and for that reason did not look at the signs. He just "turned where Jimmy turned." When asked by defense counsel if he had "ever gotten on the interstate there before in that direction and everything", the defendant replied, "No, we — we always come from the other way. * * * From Noccalula Falls." *Page 205 
Other than Trooper Kuntz's testimony, there was nothing to show what exit was used to enter the interstate except for Ms. Cunningham, who stated that she "thought" they got on "at the Ramada Inn" but was not sure and did not really know.
Generally, questions to an investigator seeking what his investigation revealed are objectionable as calling for hearsay testimony. Sanders v. State, 243 Ala. 691, 698, 11 So.2d 740
(1943); Owen v. Alabama Great Southern R. Co., 181 Ala. 552,61 So. 924 (1913); Jackson v. State, 106 Ala. 12, 17 So. 333
(1895); Hill v. State, 394 So.2d 106, 108 (Ala.Cr.App. 1981);Godbee v. State, 56 Ala. App. 174, 177, 320 So.2d 107 (1975);Elliott v. State, 48 Ala. App. 515, 517, 266 So.2d 318, cert. denied, 289 Ala. 742, 266 So.2d 321 (1972); Berry v. State,46 Ala. App. 308, 309-10, 241 So.2d 336 (1970); Burrow v. State,23 Ala. App. 99, 121 So. 449 (1929).
The mere fact that the defendant was present when Barnard made his statement to the trooper does not change the hearsay character of the trooper's testimony as to what Barnard said. "Statements made by third persons in the presence of accused are hearsay and not necessarily admissible." 22A C.J.S.Criminal Law § 746 (1961); 29 Am.Jur.2d Evidence § 610 (1967). "In order to allow out of court statements into evidence as heard by a third party in the accused's presence, the party that made the statement must be a witness in the proceeding against the accused." Sexton v. State 460 So.2d 865, 867
(Ala.Cr.App. 1984).
Statements made by a third party in the presence of the accused are also admissible if they fall within an exception to the hearsay rule such as statements by co-conspirators, C. Gamble, McElroy's Alabama Evidence § 195.03 (11) (3d ed. 1977), spontaneous exclamations or statements that are part of the res gestae, McElroy § 265.01, or tacit admissions. McElroy § 193.01. At trial, the State did not attempt to lay the proper predicate for Barnard's statement as a tacit admission by the defendant. McElroy § 193.01 (1). The State had the burden of showing that the requisite conditions were present before the defendant's silence was receivable against him as an admission.Caldwell v. State, 282 Ala. 713, 718-19, 213 So.2d 919 (1968). Most importantly, there was no testimony that the defendant remained silent upon hearing Barnard's answer to Trooper Kuntz's question. The record is simply silent on this point and, for that reason, the defendant's oral or physical response to the statement cannot be assumed. Additionally, we note that an in-chambers conference was held on the admissibility of "any testimony concerning conversations with this Defendant." The record reveals neither the content nor the result of this conference, but the State did not even attempt to introduce any statement made by the defendant. If the defendant's statements to Trooper Kuntz were inadmissible, in all probability any tacit admission should have also been suppressed or excluded.McElroy § 193.01 (10) (1980 Supplement).
However, any error in the admission of Barnard's statement to Trooper Kuntz was rendered harmless when the defendant admitted on the witness stand that they "always" came from Noccalula Falls. Romine v. State, 384 So.2d 1185, 1188 (Ala.Cr.App.), cert. denied, Ex parte Romine, 384 So.2d 1188 (Ala. 1980);Burlison v. State, 369 So.2d 844, 850 (Ala.Cr.App.),[1] *Page 206 
cert. denied, Ex parte Burlison, 369 So.2d 854 (Ala. 1979).
 II
In his closing argument to the jury, the prosecutor stated, "Steven Warden committed the Murder, if you listen to the law that Judge Swann gives you. It's not Manslaughter and it's not a misdemeanor that they want." Defense counsel objected and requested a mistrial. The defendant contends that this constitutes error because the trial court, and not the jury, determines the punishment and fixes the sentence. Alabama Code 1975, § 13A-5-1 (a).
The trial judge charged the jury on murder, manslaughter, and criminally negligent homicide. The judge charged the jury that criminally negligent homicide is a misdemeanor. He did not charge that murder and manslaughter are felonies punishable by imprisonment because to do so might have been prejudicial to the defendant.
"[W]here the punishment is imposed by the court and not by the jury, the duration of the imprisonment for the crime in question is not a proper subject of comment by counsel." 75 Am.Jur.2d Trial § 229 (1974). A defendant is not entitled to have the jury informed, either by argument of defense counsel or written requested charge, of the difference between the punishment for the charged felony offense and the punishment for a lesser included misdemeanor offense. Yancey v. State,446 So.2d 686, 691 (Ala.Cr.App. 1983); Wright v. State,441 So.2d 995 (Ala.Cr.App. 1983).
The request for a mistrial was properly denied. Here, the jury was only informed that criminally negligent homicide was a misdemeanor. They were not told whether manslaughter was a felony or a misdemeanor and were not given the range of punishment for the offenses of murder, manslaughter and criminally negligent homicide. "A motion for a mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by action of the trial court." Nix v. State,370 So.2d 1115, 1117 (Ala.Cr.App.), cert. denied, Ex parte Nix,370 So.2d 1119 (Ala. 1979). The observations of this Court inWright, 441 So.2d at 996-97, clearly indicate that action by the trial judge — if requested — could have cured any prejudicial qualities present in the prosecutor's argument.
 "[I]t is to be observed that injection of the matter into the case by either party for either purpose can often be effectively answered by the other party for the opposite purpose."
* * * * * *
 "Whatever advantage one party in a criminal case may have as to the jury's being informed as to the permissible or likely punishment that the defendant will receive if convicted is offset by the advantage the other party will receive."
 III
The defendant argues that the State failed to establish a proper predicate for the admission of the results of the defendant's blood-alcohol test. Our review convinces us that the test results were properly admitted in accordance with Alabama Code § 32-5A-194 (1980). See Whetstone v. State,407 So.2d 854 (Ala.Cr.App. 1981).
The defendant received a fair trial and has been well represented by counsel both at trial and on appeal. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Burlison is cited only for the proposition that the admission of hearsay constitutes harmless error where the same facts are admitted by the accused. In that case, this Court held, in dicta, that a victim's statement to a deputy sheriff was admissible if heard by the accused. Excluding a consideration of the constitutional objections to that ruling, McElroy § 193.01 (10) (1980 Supplement), Burlison cited Townsend v. Cityof Birmingham, 54 Ala. App. 213, 307 So.2d 24 (1974), as authority for the proposition that it was a question of fact for the jury to determine whether or not the accused heard the victim's statement. In Townsend, the conversation between the prostitute and the undercover vice squad officer, which the accused could have heard, was properly admitted either under the res gestae exception to the hearsay rule or as a statement by a co-conspirator. *Page 207