BOWEN, Presiding Judge.
Eric W. Mack was separately indicted for the first degree robbery of Angela Lynne Johnson, the first degree robbery of Judy Johnson and for the first degree robbery and second degree kidnapping of Angela Lynne Johnson. The three indictments were consolidated for trial and Mack was convicted of each charge. He was sentenced as a habitual offender to thirty-five years’ imprisonment in each case with each sentence to run concurrently. Two issues are raised on appeal.[1]
*490 I
Mack argues that his confession was improperly admitted into evidence because it was the result of a “bargain” made by the police and because there was no waiver of his Miranda rights.
Gadsden Police Detective J.B. Jeffers interrogated Mack on the afternoon of March 23, 1983. He was the only witness to testify to the circumstances surrounding this questioning and Mack’s confession.
The undisputed evidence is that Mack was advised of all his Miranda rights and stated that he understood them. Detective Jeffers testified that Mack refused to sign a written waiver stating that “he just didn’t want to sign nothing. He didn’t want to sign anything.”
Jeffers obtained “some preliminary information on his background and all” and then obtained a tape-recorded statement from Mack after Mack requested that the interrogation be tape recorded. Detective Jef-fers testified:
“Mr. Mack came into the office and I read him his rights. There was a tape recorder sitting on my desk and we had been to get — getting some preliminary information on his background and all talking to him. He looked over and seen the tape and he said, ‘Is this being recorded?’ I said, ‘No, it’s not.' I said, ‘Do you want it recorded?’ And he said, ‘Yes, I do.’ And that’s how we got an oral statement.”
After the recorded oral statement had been taken, Mack wrote a handwritten statement and signed it.
THE BARGAIN
Mack argues that his confession was coerced because it was the result of a “bargain”. The only evidence of that is found in the following portion of the transcript of the tape:
“Sergeant Jeffers: Your right name is Eric—
“The Defendant: — Wayne Mack.
“Sergeant Jeffers: — M-a-c-k?
“The Defendant: Right, Now, you’re going to stick to your bargain, seriously, right?
“Sergeant Jeffers: Sure am.
“The Defendant: Because I — I wanted to turn myself in and go to Minnesota. I wanted to. I wanted — I wanted to.
“Sergeant Jeffers: That’s what you should have done.
“The Defendant: I wanted to.
“Sergeant Jeffers: Would have saved us a lot of headaches.”
Detective Jeffers repeatedly denied that he made any promise or bargain with Mack.
“Q. And you told him that he wouldn’t be charged until you got him back down here or he was brought back down here and y’all got the warrants on him?
“A. In the tape later on I said that just in talking. He was wondering if it was going to be in the paper. And all I said, I was talking about at the present time, he wasn’t going to be charged until the warrants was served which is what I said which he can’t be. Really it’s an interpretation on how you talk about ‘charged’.
“Q. All right. But you did say that ‘you won’t be charged—
“A. In the tape.
“Q. In the tape. Okay. And when you only said he would be charged with two robberies, is that right?
“A. Yes, sir, two robberies.
“Q. Now, earlier in the tape I notice that he said, that Mr. Mack said that he felt like he was cutting his own throat by sitting here making this tape recording. Do you remember that?
“A. Yes, I do.
“Q. And you replied, ‘Not if you stay straight with me.’
“A. Yes, sir.
“Q. What did you mean by that?
“A. He was worried about his confidence in me which anybody should be when they’re sitting there making a confession on a robbery.
*491 “Q. And later on right at the very end of the tape he said, ‘You’re going to stick to your bargain, aren’t you?’
“A. Yes, sir, that’s what he said.
“Q. And what was your reply to that?
“A. I believe I said, ‘Yes’, whatever, you know.
“Q. And that bargain, you’re testifying, was that he would only be charged with two robberies?
“A. No, sir, that wasn’t the bargain.
“Q. What was the bargain?
“A. It wasn’t really what you call a bargain. What it was, he had come in and sit down and we was discussing his background, wanting to know why the Federal Marshals had him and all that which he was telling us then. He was wanting to go back to Minnesota. He wanted to get out of Alabama. Those were his exact words, he wanted to get out of Alabama. And I told him, you know, in effect, that we could help' him get out of Alabama, all he had to do was clear up these robberies and things we had on him. And that’s when he saw the tape recorder itself and then he asked that the tape recorder be used because I thought it was going to bother him. You know, I was going to move the tape recorder and he said, ‘No, I want it to be taped.’ ”
******
“Q. Now, you told him that he wouldn’t be charged until he got back to Alabama from Minnesota?
“A. When we was talking about the newspaper article and I was just making an off the wall comment about the charges couldn’t be made until the warrant was served, that’s what I said.
“Q. Now, could that have been perceived — or do you know whether that was perceived by Mr. Mack to be-just an open—
“MR. MARTIN: Now, we’re going to object to what he perceived, your Hon- or.
“Q. Do you know whether that was understood by Mr. Mack?
“A. It’s possible it was after he had done admitted to the robbery.
“Q. To be a bargain?
“A. No, it couldn’t have been as to no bargain, no.
“Q. And you don’t consider that to have been a bargain?
“A. There is no way it could have been a bargain. It wasn’t offered as a bargain or nothing else.”
******
“Q. You’ve heard Mr. Mack refer on the end of that tape to ‘are you going to keep your bargain — ’ some reference to a bargain. Did that bargain have anything to do with not making a case against him?
“No, sir, it didn’t.”
******
“Q. Now, Sergeant Jeffers, in this tape that the jury heard a few minutes ago there was some mention of a bargain. Was that bargain that you would have Mr. Mack charged only with two robberies and no kidnapping?
“A. No, sir. We made no such bargain. Bargain is a figure of speech used by Mr. Mack.
“Q. Well, when he said, ‘You’re going to stick to your bargain, aren’t you?’
“A. Yes, sir.
“Q. And you replied, ‘Sure am.’
“A. Uh-huh.
“Q. What were you replying to?
“A. We was replying to the fact that Mr. Mack wanted to get out of Alabama and we told him he could and go back to Minnesota, wherever it was he was wanting to go.
“Q. And there was never any promise made by you not to prosecute him?
“A. No, sir.
“Q. Because he wanted to go back to Minnesota?
“A. No, sir.”
“Extrajudicial confessions are prima fa-cie involuntary and inadmissible, and the burden is on the State to prove that the confession was made voluntarily.” Ex *492 parte Callahan, 471 So.2d 463, 464 (Ala.), cert. denied, — U.S. -, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985). Here, a proper Miranda warning was given and the question is whether the confession was voluntary in that it was not the result of coercion or promise of reward.
A confession must be freely and voluntarily made and not obtained by any direct or implied promises:
“Any inducement of profit or benefit held out; any hope engineered or encouraged that the prisoner’s case will be lightened, meliorated, or more favorably dealt with if he will confess; either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner which may, in their nature, generate fear or hope render it not only proper but necessary that a confession made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made after all trace of hope or fear had been fully withdrawn or explained away and the mind of the prisoner made as free from fear, intimidation or hope for reward as if no attempt had ever been made to obtain such a confession. The true test is whether, under all the surrounding circumstances, a confession has been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such a confession must be excluded from the consideration of the jury as having been procured by undue influence.” Wallace v. State, 290 Ala. 201, 204, 275 So.2d 634 (1973).
The question is whether the defendant’s will was overborne at the time he confessed.
“While it is true that any promise or inducement, however slight, either direct or implied, will render a confession involuntary. Eakes v. State, 387 So.2d 855 (Ala.Crim.App.1978), the test that must be applied in determining the voluntariness of a confessor’s statements is whether the confessor’s will was overborne at the time he confessed. Green v. State, 439 So.2d 816 (Ala.Crim.App.1983); Minor v. State, 437 So.2d 651 (Ala.Crim.App.1983); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Elliott v. State, 338 So.2d 483 (Ala.Crim.App.1976). An examination of all ‘attendant circumstances’ is the proper method for conducting a test of the voluntary nature of a confession.” Agee v. State, 465 So.2d 1196, 1198 (Ala.Cr.App.1984).
“[A] confession is not rendered involuntary by a promise of benefit that was solicited freely and voluntarily by the accused.” Eakes v. State, 387 So.2d 855, 860 (Ala.Cr.App.1978).
Under the circumstances presented to this Court, we find that the evidence of any “bargain” is, at best, conflicting. Consequently, great weight must be given the trial court’s finding of voluntariness. Williams v. State, 461 So.2d 834, 838 (Ala. Cr.App.1983), reversed on other grounds, Ex parte Williams, 461 So.2d 852 (Ala. 1984). While Detective Jeffers testified that he made no bargain or promise to Mack, Mack never testified, even at the hearing or the motion to suppress, that he confessed because of a promise or to obtain a benefit. This Court has listened to the tape recording involved in this case. In that recording, the defendant admits the commission of two robberies and repeatedly denies being involved in any other crimes. Our review of that recording, much of which is audible, convinces this Court that any “bargain” was premised on the facts that the defendant was telling the truth and was not involved in any other criminal offense.
Under these circumstances, we must be guided by the ruling of the trial judge who heard the entire recording.
THE WAIVER
Mack argues that his refusal to sign the written waiver “effectively invoked” his constitutional rights and his statement was taken in violation of the holding in Ed *493 wards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981), that, once an accused has expressed his desire to deal with the police only through counsel, he is not to be subjected to further interrogation until counsel has been made available to him unless he himself initiates further communications with the police.
The fact that an accused makes an oral inculpatory statement immediately after effectively invoking his rights is not sufficient, without more, to establish a valid waiver of those rights. Zeigler v. State, 435 So.2d 156, 157 (Ala.Cr.App.1983). Although Mack argues that Zeigler is factually indistinguishable from his case, we disagree. In Zeigler, the accused informed the police that “he did not desire to sign a waiver of his rights until he could talk to an attorney.” 435 So.2d at 157 (emphasis added).
Here, although there was no explicit oral waiver, the defendant did not invoke his right to counsel but merely refused to sign a waiver. “While a waiver will not be presumed simply from the silence of the accused after the warnings are given or simply from the fact that a confession was obtained, where the totality of the circumstances indicates that the confession was voluntary, a confession will not be excluded because the accused did not state he understood his rights or did not sign a written waiver.” Sullivan v. State, 351 So.2d 659, 664 (Ala.Cr.App.), cert. denied, Ex parte Sullivan, 351 So.2d 665 (Ala.1977). “A finding of voluntariness may be made even where a suspect refuses to sign a waiver of rights form.” Proctor v. State, 391 So.2d 1092, 1094 (Ala.Cr.App.1980). See also Player v. State, 421 So.2d 1338, 1342-43 (Ala.Cr.App.1982). “[A]n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the Miranda case.” North Carolina v. Butler, 441 U.S. 369, 375-76, 99 S.Ct. 1755, 1759, 60 L.Ed.2d 286 (1979).
We find that Mack’s inculpatory statement was properly admitted into evidence.
II
In his oral charge, the trial judge informed the jury “that the offense of kidnapping in the second degree is a felony and that the charges of Unlawful Imprisonment and Unlawful Imprisonment in the Second Degree are misdemeanors.” Defense counsel “excepted” to this comment on the ground that it was “prejudicial.” In Greer v. State, 475 So.2d 885, 887 (Ala.Cr.App.1985), this Court held:
“In the case of Brazell v. State, 423 So.2d 323 (Ala.Cr.App.1982), this court held: ‘We do not approve of the practice of instructing the jury on punishment where the fixing of punishment is the responsibility and duty of the trial judge.’ However, where the judge also instructs the jury that the duty rests with him in the imposition of the sentence, the instructions regarding the punishment will be treated as extraneous instruction, resulting in harmless error. Id. Rule 45, A.R.A.P.”
See also Crowder v. State, 476 So.2d 1241, 1243 (Ala.Cr.App.1985); Warden v. State, 468 So.2d 203, 206 (Ala.Cr.App.1985).
Here, the trial judge merely charged the jury that one offense was a felony and two other offenses were misdemeanors. Although he did not state the minimum and maximum range of punishments for each offense, neither did he instruct the jury that the imposition of punishment and the fixing of sentence were not their concern.
In People v. Nichols, 50 Mich.App. 440, 213 N.W.2d 558, 559 (1973), it was held to constitute reversible error for the trial court to inform the jury that the charged offense was a felony and the lesser-included offense was a misdemeanor. However, that opinion was expressly overruled in People v. Ritchie, 52 Mich.App. 380, 217 N.W.2d 439 (1974):
“The writer of this opinion also authored People v. Nichols, 50 Mich.App. 440, 213 N.W.2d 558 (1973), and in that case held such an instruction was error. But, an *494 incorrect decision was made in Nichols. In People v. Burk, 238 Mich. 485, 213 N.W. 717 (1927), the Supreme Court upheld the trial court’s practice of reading the statute to the jury. Statutes state whether the crime is a felony or a misdemeanor.”
On this authority, we find that the trial judge did not commit reversible error in merely informing the jury that the particular offenses involved were either felonies or misdemeanors. While such instructions are subject to criticism, see Nichols, supra, and are not encouraged for that reason, they do not necessarily constitute reversible error.
Our review convinces us that the defendant received a fair trial. The judgment of the circuit court is due to be affirmed.
AFFIRMED.
All Judges concur.

. This case was submitted for decision in November of 1984 and initially assigned to a judge who subsequently retired from this Court. Judge Bowen was assigned this case in July of 1986.